**In re the CIRCLE K CORPORATION; Circle K Convenience Stores, Inc.; Circle K Management Company; Lar–Lin, Inc.; First Circle Properties, Inc.; Utotem, Inc.; Utotem Markets of Arizona, Inc.; U Totem of Alabama, Inc.; U–Tote'M of Colorado Inc.; U–Tote'M of Miami, Inc.; Tic Toc Systems, Inc.; Monterre Properties, Inc.; Shop & Go, Inc.; Circle K General, Inc.; Circle K Hawaii, Inc.; Combined Aviation Co.; Charter Marketing Company (Connecticut); Charter Marketing Company; Mr.**

---

B's Oil Co., Inc.; Mr. B's Food Mart, Inc.; NPI Corporation; Old Colony Petroleum Company, Inc.; New England Petroleum Distributors, Inc.; and 44th Street & Camelback Limited Partnership, Debtors.

S.N. PHELPS & COMPANY, Commonwealth Oil Refining Company, Inc. and Realmark Holdings, Inc., Plaintiffs,

v.

The CIRCLE K CORPORATION and its affiliated companies, and CK Acquisitions Corp., Defendants.

Bankruptcy Nos. B–90–5052–PHX–GBN to B–90–5075–PHX–GBN. Adv. No. 93–1123–GBN.

United States Bankruptcy Court, D. Arizona.

April 28, 1995.

D.J. Baker, Weil, Gotshal & Manges, Houston, TX, for defendants/debtors.

Mitchell A. Karlan, Gibson, Dunn & Crutcher, New York City, for defendants.

Thomas P. Puccio, Richard L. Epling and Frederick A. Brodie, Winthrop, Stimson, Putnam & Roberts, New York City, for plaintiffs.

## ORDER

GEORGE B. NIELSEN, Jr., Chief Judge.

This litigation alleges improper conduct, defective disclosures and erroneous valuation information in connection with confirmation of debtor's plan of reorganization. The underlying factual circumstances are of record and will not be repeated, except as necessary for entry of this ruling. *See S.N. Phelps & Co. v. Circle K Corp. (In re Circle K Corp.),* 171 B.R. 666, 667–68 (Bankr.D.Ariz.1994).

Plaintiffs' challenge to the confirmation order was rejected as moot by the United States District and Circuit Courts. Plaintiffs' original complaint in this adversary, seeking revocation for fraud, has been rejected by this Court. *Supra,* 171 B.R. at 669–70. Nevertheless, this Court now concludes plaintiffs may proceed on a damages claim theory in an amended complaint. The Court's complete ruling follows.

### I

After dismissal of the first amended complaint for mootness, plaintiffs requested permission to file a superseding second amended complaint. Adversary Docket Nos. 107, 115, placed under seal. That motion was granted on October 17, 1994. Docket No. 138. This amended complaint specifies with greater particularity the relief sought. In defending the original complaint, plaintiffs argued section 1144 authorized relief short of total plan revocation. 11 U.S.C. § 1144. It was also urged that the Court had power to grant relief independent of section 1144. Specifically, plaintiffs invoked section 105 and inherent remedial power under Civil Rule 54(c), Fed.R.Civ.P. 11 U.S.C. § 105(a).

This Court declined to consider these arguments, ruling no remedy could be fashioned from the existing complaint. Plaintiffs believe a valid cause of action is now alleged in their second amended complaint. Remedies to redress harm and divest alleged tortfeasors of wrongfully obtained property, without affecting innocent parties and creditors are now sought.

While this Court dismissed the section 1144 complaint as moot, the ruling was not

directed at remedies raised by plaintiffs for the first time in response to defendants' motion. 171 B.R. at 668.

Defendants' instant motion seeks dismissal of the amended complaint that invokes these additional remedies. Docket 144. Defendants argue this complaint also should be dismissed. Alleged grounds include mootness, res judicata and unavailability of section 105 relief. In addition, defendants argue that summary judgment should issue on the underlying fraud issues. *Supra.* Both motions are denied.

## II

■ Mootness invokes the constitutional principle that federal courts only hear live controversies. If a court rules for a party, but cannot grant effective relief, the matter is dismissed as moot. *Chang v. Servico, Inc. (In re Servico, Inc.),* 161 B.R. 297, 300 (S.D.Fla.1993); *In re Circle K, supra,* 171 B.R. at 669.

Defendants again urge that mootness applies, as they successfully argued it applied to the earlier complaint. They note the Ninth Circuit dismissed plaintiffs' direct appeal, since the plan was substantially consummated and could not be unwound without upsetting multiple transactions. *S.N. Phelps & Co., et al. v. The Circle K Corp., et al. (In re Circle K Corp., et al.),* No. 93–16278, 1994 WL 83319 (1994). *See In re Circle K Corp.,* 171 B.R. at 668 n. 1.

In *Phelps,* the Court of Appeals held the plan of reorganization was so far implemented it was impossible to fashion effective relief. *Supra* at 3. Plaintiffs argue the Ninth Circuit was focusing on a direct appeal of the confirmation order and this Court was earlier dealing with a § 1144 action.

The difference is that plaintiffs now concede the effectiveness of the confirmation order. They pledge they are not seeking to undo confirmation. Thus, the concerns faced by the Circuit and this Court on the section 1144 issue, i.e., undoing myriad transactions, are no longer present. Under the amended complaint, if plaintiffs are successful, a damages remedy will be fashioned.

## III

In granting the earlier motion to dismiss, this Court noted the original complaint was premised on section 1144. Although plaintiffs included the pro forma "granting such other and further relief as this Court may deem just and proper," this was an insufficient vehicle to plead additional theories in response to the dismissal motion. *In re Circle K Corp.,* 171 B.R. at 668; Transcript of June 1, 1994, at 27–31, Docket 108.

The Court ruled that an order confirming a Chapter 11 reorganization plan is revoked only under 11 U.S.C. § 1144. *Id.* at 668 (citing *Dale C. Eckert Corp. v. Orange Tree Associates, Ltd. (In re Orange Tree Associates, Ltd.),* 961 F.2d 1445, 1447 (9th Cir. 1992)).

Other courts have held additional remedies may be available to creditors injured by fraud. *In The Matter of Newport Harbor Associates,* 589 F.2d 20, 24 (1st Cir.1978); *In re Circle K Corp., supra,* at 668. However, because the complaint was squarely grounded on section 1144, this Court construed that section, not other remedies raised by plaintiffs for the first time in responding to the dismissal motion. *Id.* at 668.

Because plaintiffs timely filed a complaint under section 1144, there was no need to resort to other remedies, when the basic revocation relief is invoked. Transcript at 30. *See also Official Committee of Unsecured Creditors v. H.B. Michelson (In re Michelson),* 141 B.R. 715, 723 n. 28 (Bankr. E.D.Cal.1992) (noting "[t]he facts of this case ... do not present the question of whether section 1144 preempts a court's inherent power to deal with fraud on the court at any time.")

## IV

■ The current issue is whether plaintiffs may now invoke other remedies, after their section 1144 complaint is dismissed as moot.

■ What if the alleged fraud is not discovered until 181 days after the final confirmation order? A section 1144 complaint would be time-barred. *In re Orange Tree Associates, supra* at 1447–49; *In the Matter of Newport Harbor Assocs., supra* at 23–24.

However, this does not end the analysis. *In the Matter of Newport Harbor*, debtor appealed from an order denying a motion to revoke confirmation. The motion came three and a half years after the confirmation order and was barred. The court found policies of reasonable expedition, finality and consistent precedent mandated that the revocation statute be the exclusive means to revoke a confirmed plan. *Id.* at 23–24.

However, the Court went on to state:

> Our opinion should not be read to suggest ... creditors who may have been injured by fraud are necessarily without other remedies in other forums.... It would appear ... res judicata and collateral estoppel would not bar such an action, at least where the alleged fraud could not have been asserted in the bankruptcy proceedings, the underlying factual claims were not actually adjudicated, and the relief sought would not upset the confirmed plan....

*Id.* at 24.

The "other relief" language of *Newport Harbor* is analyzed in later cases. In *F & M Marquette National Bank v. Emmer Brothers Co. (In Re Emmer Brothers Co.)*, 52 B.R. 385 (D.Minn.1985), the district court reversed the bankruptcy court for holding a complaint was barred by section 1144. The district court noted "if Marquette's action for fraud is construed as an attempt to revoke the confirmation ... it must be held to be barred by the limitations period in section 1144." *Id.* at 391.

However, Marquette was not attempting to enlarge a section 1144 time limit. The bankruptcy court had mischaracterized the complaint. *Id.* "Marquette points out that it was never a participant in the plan, that it had no interest in the plan, and that the undisclosed asset which it seeks to recover was never a part of the plan. Marquette argues that its lawsuit does not seek revocation of the ... plan, but rather embodies independent causes of action, so that section 1144 is irrelevant."

*Id.*

Debtor argued the suit was an impermissible collateral attack on the confirmed plan and was subject to section 1144. *Id.*

The court held the complaint was "not an attempt to revoke or otherwise collaterally attack the confirmation order that is subject to the limitations of section 1144." *Id.* The district court noted "two of the cases cited ... recognized that the 180 day deadline in section 1144 does not act as a bar to independent causes of action based on a debtor's wrongful conduct." *Id.* at 392. Applying the test of *Newport Harbor*, the litigation was allowed to proceed. Since debtor's interest in certain litigation was not disclosed until after the confirmation order, Marquette could not have asserted fraud in the Chapter 11 litigation. Since the asset was undisclosed, the confirmation order did not deal with it. There was no adjudication of this issue. Most importantly, the relief sought would not upset the confirmed plan. *Id.* at 392. The court noted a judgment concerning the monies debtor could receive in the litigation would not affect plan distributions previously made to creditors. The court concluded "this case does not involve an attempt to 'redivide the pie' by a disgruntled participant in the plan. Rather, it involves a dispute about an additional asset that did not figure into the reorganization plan." *Id.* Thus, section 1144 did not bar the suit.

This issue was briefly considered by a district court, which was examining discovery issues in the *Texaco* case. *Williams v. Texaco, Inc.*, 165 B.R. 662, 672, n. 3 (D.N.M.1994). The court noted "[a]nother factual issue related to Texaco's discharge in bankruptcy is whether Texaco committed fraud against plaintiffs during the bankruptcy proceedings. In lieu of collaterally attacking the confirmation order, plaintiffs seek damages.... This cause of action has some support in the case law." *Id.*, citing *Emmer Brothers* and *Newport Harbor*.

Finally, in *Farley v. Coffee Cupboard, Inc. (In re Coffee Cupboard, Inc.)*, 119 B.R. 14, 19 (E.D.N.Y.1990), the court noted "creditors may not attack confirmation orders by simply characterizing their attempt as an independent cause of action." However, the court cited *Newport Harbor* and *Emmer Bros.* for the proposition that

Where a claim does not involve an attempt to "redivide the pie" by a disgruntled participant . . ., but rather involves a dispute about an additional asset that did not figure in the reorganization Plan, an adjudication of the dispute would not upset the confirmed Plan, and the 180 day time litigation of Section 1144 is not a bar.

119 B.R. at 19.

These cases establish that in applying *Newport Harbor,* courts look carefully at the cause of action and requested relief to determine if plaintiff is seeking to revoke confirmation or "redivide the pie."

Can *Newport Harbor* apply where the action is timely filed, cast as a revocation action, and dismissed as moot? On one hand, the allegations are nearly identical. Thus, this amended complaint could be viewed as an attempt to mask what was originally sought: revocation of the confirmation order.

However, the current relief sought is not to have the confirmation order revoked. Plaintiffs have ended their attack on the confirmation order and now seek damages or restitution. They argue there will be no "redivision of the pie." Innocent creditors keep their dividends.

Applying *Newport Harbor,* this Court will not dismiss the action on grounds the finality expressed in section 1144 bars the complaint. First, this court must accept as true, all the complaint's allegations in their entirety, drawing all reasonable inferences in plaintiffs' favor. *In re Circle K Corp., supra,* 171 B.R. at 668.

Given this, it is arguable the alleged fraud could not have been asserted in the confirmation litigation. Certainly, the underlying factual claims were not actually adjudicated. There is a triable issue of fact whether this cause of action was discovered before entry of the confirmation order. Plaintiffs must prevail on this point, given the res judicata nature of a confirmation order. *See* section V, *infra.* If plaintiffs prevail, the Court can fashion a remedy that does not upset the confirmed plan, i.e., monetary damages. Thus, plaintiffs' cause of action meets the bare requirements of *Newport Harbor,* al-though it is clear plaintiffs are indeed disgruntled creditors.

## V

■ Does the confirmation order itself bar plaintiffs from litigating this claim independent of section 1144?

Generally, four elements must be present in order to establish the defense of *res judicata:* (1) the parties were identical in the two actions; (2) the prior judgment was rendered by a court of competent jurisdiction; (3) there was a final judgment on the merits; and (4) the same cause of action was involved in both cases.

*Heritage Hotel Limited Partnership I v. Valley Bank of Nevada (In re Heritage Hotel Partnership I),* 160 B.R. 374, 376–77 (9th Cir. BAP 1993).

■ The provisions of a confirmed plan bind any creditor, whether or not impaired under the plan and whether or not such creditor accepts the plan. 11 U.S.C. § 1141(a). The confirmation order clearly was a final judgment. *In re Heritage Hotel, supra,* at 377. Confirmed plans of reorganization are binding on all parties. Issues that could have been raised concerning the plan are barred by res judicata. *Id.* It is well-settled that a confirmation order is a binding, final order, accorded full res judicata effect, which precludes issues that could have been raised during the confirmation process.

In *Heritage Hotel,* debtor, its general partner and its loan guarantor filed a state court action, alleging lender liability from a prepetition relationship. The action was removed to bankruptcy court. That court held debtor was bound by the confirmation order. The Bankruptcy Appellate Panel ruled res judicata bars nondebtor plaintiffs. 160 B.R. at 378. Parties subject to the res judicata effect of a Chapter 11 plan include creditors and parties in privity or successors in interest.

To release creditors and equity security holders from the bonds of *res judicata* would allow them to launch collateral attacks on confirmed plans, undermining the necessary ability of bankruptcy courts to settle all of the claims against the debtor. To interpret the term "party" narrowly

would also run counter to the provisions of the Code which outline the effect of plans and offer methods for challenging the bankruptcy orders.

*Id.* at 376–77 n. 4

In the present case, the Court will defer at this point on whether the confirmation order bars this litigation. The Court will allow further factual development concerning whether plaintiffs used due diligence in prosecuting their claims.

## VI

█ Defendants request summary judgment on the issue of fraud. Although section 1144 requires a showing of fraud, it does not define that term. *In re Longardner & Associates, Inc.,* 855 F.2d 455, 461 (7th Cir.1988), *cert. denied,* 489 U.S. 1015, 109 S.Ct. 1130, 103 L.Ed.2d 191 (1989); *In re Michelson,* 141 B.R. at 724.

*Michelson* noted that the broad range of frauds that justify revoking confirmation confirms that a fraud upon the court is at the heart of section 1144. *Id.* at 725. In *Michelson,* the fraud was a misrepresentation or omission of material facts in the disclosure and confirmation process. "Such a fraud plainly would have justified revocation of a Chapter XI plan." *Id.*

*Longardner* cited a Chapter 13 case which explained the burden a creditor must carry to have the plan revoked under 11 U.S.C. § 1330 (which is identical to section 1144):

> To support a complaint for revocation, the plaintiff must prove each of the elements of a traditional cause of action for deceit: (1) that the debtor made a representation regarding her compliance with … 1325 which was materially false; (2) that the representation was either known by the debtor to be false, or was made without belief in its truth, or was made with reckless disregard for the truth; (3) that the representation was made to induce the court to rely upon it; (4) the court did rely upon it; and (5) that as a consequence of such reliance, the court entered the confirmation order.

*In re Longardner & Assocs.,* 855 F.2d at 461 n. 6.

█ Without a showing of the requisite fraudulent intent, the court has no authority under section 1144 to revoke confirmation. *Supra,* at 461–62. Specific intent is not needed, however. *In re Michelson, supra,* at 725. "[T]he requisite intent, in the context of defective disclosure, exists where there is intentional omission of material fact. Thus, a person who … knows of the existence of material information, and … does not disclose it has fraudulent intent for purposes of revoking the order confirming a plan." *Id.* Finally, as conceded by plaintiffs, since they seek compensatory damages, they must show the fraud injured them personally.

Defendants argue plaintiffs' amended complaint rests on three faulty premises:

First, in the disclosure statement and during the confirmation hearings, defendants allegedly concealed the fact that current management would likely own equity in the reorganized debtors, under a post-confirmation management stock incentive program.

Second, in the disclosure statement and during the confirmation hearings, defendants allegedly concealed or misrepresented Circle K's beliefs about the likely performance of the reorganized debtors following confirmation.

Third, had defendants not misrepresented these facts, debtors' plan would not have been confirmed, and plaintiffs would have recovered on their bonds.

Defendants assert the evidentiary record refutes these predicates. Under the first factor, defendants argue there was no material omission or misrepresentation. The disclosure statement did note management might receive equity in the reorganized debtor. No limits were placed on the amounts received or price paid. Representatives of the three senior creditor constituencies testified they knew management might receive equity. Even plaintiffs' lawyer was aware of this provision.

Defendants note there was further disclosure that management would likely acquire an equity interest during the confirmation litigation. Bondholders' counsel asked no

questions on this subject. No one was misled, defendants argue.

Plaintiffs respond that an issue of fact exists. First, when read most favorably to plaintiffs, the language on page 113 of the disclosure statement omits mention of management purchasing stock at closing, although this result had already been arranged. In addition, the disclosure statement misleadingly refers to an incentive program, suggesting an award be based on future performance, rather than revealing management, would be co-investors at sale closing. It was stated CK Acquisitions,[1] after the plan's effective date, would consider instituting a management incentive plan. It is alleged such plan was offered to management long before confirmation. Finally, the disclosure statement allegedly misrepresents that no decision had been made as of January 15, 1993.

Plaintiffs argue there are disputed facts regarding whether management's equity stake was disclosed during the hearings. They allege the plan proponents' testimony was that in other acquisitions, Investcorp offered an equity stake to management, but in this acquisition its only partners were passive investors.

Plaintiffs assert evidence demonstrates that statements made in the disclosure statement, or during confirmation, were materially false. Investcorp and Circle K management allegedly reached decisions on material elements of management participation long before issuance of the disclosure statement. Given management's consistent support of CK Acquisitions' plan, disclosure of their personal stake is important.

This Court will develop a complete evidentiary record to resolve these issues. Summary judgment is not warranted on such complex, important and disputed issues.

A sealed memorandum dated July, 1992, states "management is favorably disposed to getting equity in a solidly capitalized company.... Management has helped to temper the Creditors' expectations with regard to a stand alone or 'bootstrap' plan." What this actually means is difficult to say. It could suggest negotiations were under way to include management in ownership of the reorganized debtors.

Debtors state the disclosure statement properly disclosed CK Acquisitions was the sole purchaser. However, a confidential memorandum states the company would be acquired by Investcorp and senior management. A sealed letter dated November 30, 1992, states "at closing, management ... will purchase about 1.43% of the common equity. They will earn additional stock options based on future earnings performance."

The disclosure statement provides: "The purchaser has informed Debtors' senior management that it would consider providing after the Effective Date, through New Circle K, an incentive program based on equity options or other incentives for key employees. NO decisions in that regard have been made as of the date hereof." Disclosure Statement at 113. Yet, there are documents that suggest an equity program was well on its way to implementation at the time the disclosure statement was filed. A confidential memorandum from November, 1992 suggests Circle K will emerge from bankruptcy when acquired by Investcorp and senior management. A memo dated October 28, 1992, notes that the numbers look "good." In short, disputed facts require the motion be denied.

A second major issue involves valuation. Again, there are sufficient disputed facts to warrant further record development. A defense witness states by affidavit that financials contained in the confidential memorandum fall within the range of projections in the disclosed valuation analysis of Salomon Brothers. Yet, another witness states "based on the S–1 we have concluded that the values placed on Circle K at the Confirmation Hearings were substantially understated." Supplemental Affidavit at 3. An earlier affidavit alleges the sealed memorandum contains representations that the value of Circle K was significantly greater than the $399.5 million sales price. Plaintiffs' witness

---

1. CK Acquisitions Corporation, debtors' purchaser under the sale plan, is controlled by an investment entity known as Investcorp. 171 B.R. at 667.

asserts a figure of $674.8 million for a 1993 value of the companies.

Defendants reply that plaintiffs' affiant testified at his deposition that his affidavit did not constitute an actual opinion of value. Deponent stated the $674.8 million valuation was an exercise, translating from Investcorp terminal value to potential present value. Regardless, this complex issue needs further factual development.

While valuation is important, plaintiffs allege misstatements and omissions were material in generating creditor support for the plan. Plaintiffs claim the promise of equity to management affected the confirmation process to the detriment of junior creditors. Superseding Proposed Second Amended Complaint at 37. Plaintiffs assert pre-confirmation management originally proposed a plan that ceded 20% of the company to plaintiffs. Arguably, plaintiffs would have a recovery, in the form of equity, regardless of value, under such a plan.

The summary judgment motion and motion to dismiss are denied.

ORDERED ACCORDINGLY.