In re The CIRCLE K CORP., et al., Debtors.

S.N. PHELPS & COMPANY, Commonwealth Oil Refining Company, Inc. and Realmark Holdings, Inc., Plaintiffs,

v.

The CIRCLE K CORPORATION and its affiliated companies, and CK Acquisition Corp., Defendants.

Bankruptcy No. 90–5052–PHX–GBN to 90–5075–PHX–GBN.
Arizona Adversary No. 93–1123.
S.D.N.Y. Misc. No. 95–437.

United States Bankruptcy Court, S.D. New York.

Aug. 7, 1996.

Thomas P. Puccio, New York City, Winthrop, Stimson, Putnam & Roberts (Richard L. Epling, Frederick A. Brodie, Robert E. Bailey, of counsel), New York City, Co–Counsel to Plaintiff.

Gibson, Dunn & Crutcher (Mitchell A. Karlan, Meredith C. Braxton, Leslie E. Moore, of counsel), New York City, for Defendants.

Anderson, Kill, Olick & Oshinsky, P.C. (Martin F. Brecker, Gabriella Jordan, of counsel), New York City, Subpoenaed Person, Pro Se.

Andrews & Kurth, L.L.P. (James D. Higgason, Jr., of counsel), New York City, Subpoenaed Person, Pro Se.

Harvey Greenfield, New York City, for Intervenor Jerry Krim.

### MEMORANDUM DECISION REGARDING WORK PRODUCT PRIVILEGE

STUART M. BERNSTEIN, Bankruptcy Judge.

Three former debenture holders of the Circle K Corporation ("Circle K") commenced this adversary proceeding in the United States Bankruptcy Court for the District of Arizona. The defendants are the reorganized debtors ("New Circle K") and CK Acquisitions Corporation ("CK"), the entity that purchased all of New Circle K's newly issued stock under the plan. The

plaintiffs seek legal and equitable relief in connection with their claim that the defendants fraudulently procured Circle K's confirmation.

The defendants seek to compel the disclosure of three documents prepared by nonparty Anderson, Kill, Olick, & Oshinsky, P.C. ("AKOO") in the course of its representation of the Official Committee of Debenture Holders in the Circle K bankruptcy. AKOO opposes the disclosure, invoking the work product doctrine. After considering the parties' arguments and examining the three documents, I conclude that the latter contain opinion work product which need not be disclosed. Accordingly, the defendants' motion to compel disclosure is denied. I further conclude that sanctions are not warranted.

## FACTS

The facts underlying this dispute are set out in an unreported decision setting forth my conclusion, *inter alia,* that AKOO did not waive the work product privilege by failing to provide a privilege log when it initially interposed its objection to the document request. *S.N. Phelps & Co. v. Circle K Corp. (In re Circle K Corp.),* S.D.N.Y. Misc. No. 95–437 (Bankr.S.D.N.Y. May 30, 1996) ("Slip op."). I repeat only those facts necessary to provide a context for this decision.

Circle K and its affiliates filed their chapter 11 cases in the United States Bankruptcy Court for the District of Arizona on May 15, 1990. During the case, an official committee (the "Committee") was appointed to represent the debenture holders, a constituency that included the plaintiffs as well as the intervenor, Jerry Krim. The Committee retained AKOO as its counsel, and Martin Brecker, a member of AKOO, was in charge of the matter.

New Circle K confirmed its plan on June 16, 1993. Under the plan, New Circle K sold all of its newly issued stock to CK for $399.5 million.[1] *S.N. Phelps & Co. v. Circle K Corp. (In re Circle K Corp.),* 171 B.R. 666, 667 (Bankr.D.Ariz.1994) ("*Circle K I* "). The plan did not provide for any distribution to

Circle K's debenture holders, and the Committee vigorously opposed it. Among other things, the Committee believed that Circle K's management had undervalued the debtor's assets, which, if properly valued, would have been sufficient to pay a dividend to the debenture holders.

Following the Committee's unsuccessful direct challenge to the confirmation order, the plaintiffs commenced this adversary proceeding in the Arizona bankruptcy court to revoke the confirmation order under 11 U.S.C. § 1144. They charged that the defendants had fraudulently procured the confirmation order, primarily by concealing the right of Circle K's management to purchase equity in New Circle K, and by undervaluing the debtor in the confirmation process. *Circle K I,* 171 B.R. at 667–68. In other words, management "low balled" the price and sold out the debenture holders because they were to receive an undisclosed benefit from the buyer. Chief Judge Nielsen dismissed the complaint as moot, ruling that the plan had advanced to the point that he could not fashion effective relief even if the plaintiffs prevailed. *Id.* at 670.

■ The plaintiffs then filed an amended complaint which relied upon the same allegations, but sought damages and equitable relief instead of revocation. The defendants again moved to dismiss the complaint, or in the alternative, for summary judgment. Chief Judge Nielsen denied the motion, holding that although the plaintiffs could not revoke the confirmation, they could seek damages on account of the alleged fraud. *S.N. Phelps & Co. v. Circle K Corp. (In re Circle K Corp.),* 181 B.R. 457, 465 (Bankr. D.Ariz.1995) ("*Circle K II* "). To overcome the *res judicata* effect of the confirmation order, the plaintiffs would have to demonstrate at trial that they did not discover the fraud prior to confirmation, *id.* at 462, and could not have discovered it through the exercise of due diligence. *See id.* at 463.

In due course, the defendants issued a subpoena duces tecum to AKOO, by Martin Brecker, on June 30, 1995. AKOO immediately objected. The defendants then moved

---

**1.** CK was controlled by an investment entity known as Investcorp. *S.N. Phelps & Co. v. Circle* *K Corp. (In re Circle K Corp.),* 171 B.R. 666, 667 (Bankr.D.Ariz.1994).

to compel compliance with the subpoena in this Court, and after some legal skirmishing among the parties, narrowed their request to documents concerning management incentives, such as bonuses, success fees or equity participations, under the debtor's plan. AKOO eventually produced a privilege log identifying four documents it maintained were attorney work product, but thereafter withdrew the claim as to one of them, leaving only three. AKOO also supplemented the privilege log with the Affidavit of Martin Brecker, sworn to June 6, 1996 ("Brecker Aff.".)

Two depositions that took place during this adversary proceeding bear directly on the work product issue. In March, 1994, the parties deposed Martin Brecker. At his deposition ("Brecker Dep."), Brecker said, among other things, that he wanted to discover the identity of Investcorp's investors, including whether they were part of Circle K's management, because it might help the Committee in its litigation. (*Id.* at 17.) He also testified that he was interested in learning if the investors included members of management because he believed that the purchase price was inadequate and he was looking for reasons why the company was willing to accept such a low price. (*Id.* at 18.) Finally, he stated that he was concerned because the bondholders were getting nothing under the plan, and he was looking for reasons why management was willing to sell the business for such a low price. (*Id.*) The defendants point to this testimony as a waiver of the work product privilege concerning management incentives and their connection to the allegedly inadequate sale price.

The defendants also deposed Jerry Krim. Krim is a former debenture holder who has intervened in this adversary proceeding, and is seeking to represent a class of debenture holders. At his March 1996 deposition

("Krim Dep."), Krim testified about certain conversations he had with AKOO attorneys during the Circle K proceedings and prior to the confirmation of the debtor's plan. He stated that he did not retain a personal attorney to represent him in connection with the bankruptcy case (*Id.* at 38.) To keep abreast, he spoke to Committee counsel, but does not remember the name of the attorneys. (*Id.* at 42.) He called several times, and was referred to a woman attorney, but he does not remember her name. (*Id.* at 43.) He asked her to keep him apprised of the details of the case. (*Id.* at 44.)

At one point, the AKOO attorney told Krim "that they had an expert that evaluated the value of the—franchise, and it was much higher than the Court was placing on it." (*Id.*) She also told him that in her opinion, the auction was not a true auction (*id.* at 45), and discouraged others from bidding. (*Id.* at 47.) She and Krim never discussed Circle K's management's attitude toward the auction, the bidders or the bondholders. (*Id.* at 45–46.) The defendants point to the original conversations, and to Krim's testimony about those conversations, as additional grounds to find a waiver.

## DISCUSSION

### A. Introduction

■ The work-product rule is a qualified privilege codified in Rule 26(b)(3) of the Federal Rules of Civil Procedure.[2] *Upjohn Co. v. United States,* 449 U.S. 383, 398, 101 S.Ct. 677, 687, 66 L.Ed.2d 584 (1981); *Bowne of New York City, Inc. v. AmBase Corp.,* 150 F.R.D. 465, 471 (S.D.N.Y.1993). First recognized by the Supreme Court in the landmark decision of *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), the doctrine "shelters the mental processes of the attorney, providing a privileged area within which he can prepare his client's case."

**2.** Rule 26(b)(3) provides, in pertinent part, as follows:

[A] party may obtain discovery of documents and tangible things otherwise discoverable ... and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative ... only upon a showing that the party seeking discovery has substantial need of the materials in the prepa-

ration of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

*United States v. Nobles,* 422 U.S. 225, 238, 95 S.Ct. 2160, 2170, 45 L.Ed.2d 141 (1975). The immunity applies both to the tangible work product and deposition testimony concerning the substance of that work product. *Bowne of New York City, Inc. v. AmBase Corp.,* 150 F.R.D. at 471.

The work product doctrine represents a balance struck between the right to know and the lawyer's ability to prepare his case:

> Inherent in recognition of a privilege for attorney work product is a judgment that society's interest in ferreting out the truth through litigation will not best be served by exposing a party's case to impeachment by documents reflecting the opinions or preliminary evaluations of its counsel, even if the party's position in court is inconsistent with counsel's private thoughts.

*In re Sealed Case,* 676 F.2d 793, 817 n. 95 (D.C.Cir.1982). The purpose of the privilege is to protect the integrity of the adversary process by preventing an adversary from obtaining a free ride in preparing his client's case. *Martin v. Valley Nat'l Bank,* 140 F.R.D. 291, 320 (S.D.N.Y.1991). "Discovery was hardly intended to enable a learned profession to perform its functions either without wits or on wits borrowed from the adversary." *Hickman v. Taylor,* 329 U.S. 495, 516, 67 S.Ct. 385, 396, 91 L.Ed. 451 (1947) (Jackson, J., concurring).

The party asserting the privilege has the burden of proving its basis, *In re Leslie Fay Cos. Sec. Litig.,* 161 F.R.D. 274, 280 (S.D.N.Y.1995); *Park Avenue Bank, N.A. v. Bankasi,* 93 Civ. 1483 (JFK), 1994 WL 722690 at *1 (S.D.N.Y. Dec. 30, 1994); *Bowne of New York City, Inc. v. AmBase Corp.,* 150 F.R.D. at 470, and generally does so through a combination of affidavits and privilege logs that address each document at issue. *Id.* at 474. In camera review should be undertaken if the parties genuinely dispute the description of the documents, but is neither appropriate nor preferable as a substitute for the proponent's submission of an adequate record to support the privilege claim. *Id.* at 475.

Once the proponent satisfies its burden, the party seeking discovery must come forward and demonstrate a ground for piercing the privilege. He may generally do so in one of several ways. First, he can show that an exception to the work product doctrine excludes the material from its protection. "Exception comes into play when a privileged relationship is used to further a crime, fraud, or other fundamental misconduct." *In re Sealed Case,* 676 F.2d at 807. Second, he can show that the holder impliedly waived the privilege. "Implied waiver deals with an abuse of a privilege itself rather than of a privileged relationship." *Id.* Thus, the holder of the privilege cannot use it as a tool to manipulate the truth-seeking process. *Id.*

Third, since the privilege is a qualified one, the opponent may sometimes obtain work product upon a showing of need. The law distinguishes, however, between non-opinion work product (work product containing non-privileged, relevant facts) and opinion work product (work product that contains the attorney's opinions, judgments and thought processes). Opinion work product receives higher protection, and a party seeking to discover it must show "extraordinary justification." *In re Sealed Case,* 676 F.2d at 809–10; *see also Upjohn Co. v. United States,* 449 U.S. 383, 401, 101 S.Ct. 677, 688, 66 L.Ed.2d 584 (1981) ("As Rule 26 and *Hickman* make clear, such work product cannot be disclosed simply on a showing of substantial need and inability to obtain the equivalent without undue hardship.").

## B. The AKOO Documents

AKOO asserts the work product privilege to protect three documents from disclosure to the defendants. The defendants primarily contend that AKOO waived any protection through (1) disclosure to Krim, (2) Krim's disclosure at his deposition and (3) Brecker's testimony at his own deposition. The defendants also contend that they have established a need even in the absence of any waiver. I need not address these arguments, however, unless I conclude that AKOO has met its burden of establishing that these three documents are work product.

## 1. AKOO's Burden of Proof

 AKOO's privilege log and the Brecker affidavit make this required showing. According to the privilege log, two of the documents, dated April 1, 1992, are memoranda prepared by Brecker and circulated to several lawyers who are identified by name. The memoranda concern, respectively, (1) an interim order and the plan and (2) a letter agreement regarding the plan of reorganization. The third document is dated October 26, 1992, and is described as handwritten notes prepared by David C. Forman, Esq. According to the privilege log, Mr. Forman did not send these notes to anyone.

While the privilege log identifies the documents as having been prepared by attorneys, it says nothing of the circumstances surrounding their preparation, and in particular, whether they were prepared for, or in anticipation of, litigation. The Brecker affidavit, at paragraph 3, supplies the missing information. Brecker prepared the two April 1, 1992 memoranda for possible inclusion in a pleading to be filed on behalf of the Committee, and circulated the drafts to other AKOO attorneys. They therefore satisfy the criteria for work product.

The third document was prepared during a meeting between Messrs. Brecker and Forman at which they discussed an objection that the Committee intended to file against the debtor's disclosure statement. According to the Brecker affidavit, "[t]he notes contain my thoughts and David's thoughts respecting the subject matter and drafting of the objection and allocation of responsibilities between us and others who would be working on the task." (Brecker Aff. ¶ 3(a).) This document also satisfies the criteria for work product.

## 2. Waiver by Disclosure

 The work product doctrine protects the attorney's materials, and consequently, the attorney may waive the benefit of the privilege. *Carte Blanche (Singapore) PTE, Ltd. v. Diners Club Int'l, Inc.*, 130 F.R.D. 28, 32 (S.D.N.Y.1990). Although the client can also waive the privilege as to non-opinion work product, the attorney may still contest the waiver as to opinion work product. *See Buck v. Aetna Life & Casualty Co.*, Civ. A. No. 91–2832, 1992 WL 130024 at *2 (E.D. Pa. June 5, 1992). As noted, the defendants contend that AKOO waived the work product privilege through its disclosure to Krim, or Krim's subsequent disclosure of those communications at his deposition.

### a. Disclosure to Krim

 The disclosure to Krim raises an important threshold bankruptcy question: was Krim, in his capacity as a debenture holder, a client of AKOO for purposes of the attorney client and work product privileges? The committee owes fiduciary duties to *the class* of creditors that it represents (*i.e.*, its constituency). *In re SPM Mfg. Corp.*, 984 F.2d 1305, 1315 (1st Cir.1993); *Pan Am Corp. v. Delta Air Lines, Inc.*, 175 B.R. 438, 514 (S.D.N.Y.1994), and several courts have held, in analogous circumstances, that the members of an association are the clients of the association's attorneys. *See, e.g., Philadelphia Hous. Auth. v. American Radiator & Standard Sanitary Corp.*, 294 F.Supp. 1148, 1149–50 (E.D.Pa.1969); *United States v. American Radiator & Standard Sanitary Corp.*, 278 F.Supp. 608, 614 (W.D.Pa.1967); *Schwartz v. Broadcast Music, Inc.*, 16 F.R.D. 31, 32–33 (S.D.N.Y.1954).

*Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746 (2d Cir.1981), an attorney disqualification case, casts doubt on this reasoning, instead characterizing the association's members as "vicarious clients." *Id.* at 749; *accord British Airways, PLC v. Port Auth.*, 862 F.Supp. 889, 894–95 (E.D.N.Y.1994); *North Star Hotels Corp. v. Mid–City Hotel Assocs.*, 118 F.R.D. 109, 112 (D.Minn.1987). Thus, mere status as a constituent did not make the association member a client—in the traditional sense—of the association's lawyers, and this conclusion follows even more strongly in light of the committee's role in a bankruptcy proceeding.[3]

 The committee and its counsel often take positions against particular creditors.

---

3. This conclusion does not foreclose a situation in which the facts support the existence of a traditional attorney-client relationship between a creditor and committee counsel.

An official committee is a party in interest, and has the right to be heard on any issue in the case. 11 U.S.C. § 1109(b). A committee may object to a creditor's claim. *See In re Angeles Corp.,* 177 B.R. 920 (Bankr.C.D.Cal. 1995). It may, under certain circumstances, obtain authorization to sue third parties, including creditors, on behalf of the estate, *see Unsecured Creditors Comm. of Debtor STN Enters., Inc. v. Noyes (In re STN Enters.),* 779 F.2d 901 (2d Cir.1985), and may seek to equitably subordinate the claim of a creditor. *Tennessee Valley Steel Corp. v. B.T. Commercial Corp. (In re Tennessee Valley Steel Corp.),* 183 B.R. 795 (Bankr.E.D.Tenn.1995). Neither the committee nor its lawyers could function if each constituent was a client.

■ Accordingly, Krim did not become a client of AKOO simply because he owned debentures and the Committee represented the interests of the debenture holders. In addition, nothing has been brought out to show that he ever became a client of AKOO in the traditional sense; he sought status reports rather than legal advice when he spoke to AKOO. As a result, if AKOO disclosed work product to Krim, which I assume it did for the purpose of analysis, this constitutes disclosure to a non-client. It does not follow, however, that AKOO thereby waived the work product privilege.

■ The work product privilege is designed to protect the adversary system rather than confidential communications. *United States v. American Tel. & Tel. Co.,* 642 F.2d 1285, 1299 (D.C.Cir.1980). Consequently, "to effect a forfeiture of work product protection by waiver, disclosure must occur in circumstances in which the attorney cannot reasonably expect to limit the future use of the otherwise protected material." *Doe v. United States (In re Doe),* 662 F.2d 1073, 1081 (4th Cir.1981), *cert. denied,* 455 U.S. 1000, 102 S.Ct. 1632, 71 L.Ed.2d 867 (1982). The holder of the work product privilege waives it only by voluntarily disclosing it in such a manner that it is likely to be revealed to its adversary. *Bowne of New York City, Inc. v. AmBase Corp.,* 150 F.R.D. at 479. Conversely, the holder does not waive the privilege by disclosing the work product to another person who has a common interest with

the client and is not reasonably viewed as someone who will, in turn, disclose it to an adversary. *In re Doe,* 662 F.2d at 1081; *Bowne of New York City, Inc. v. AmBase Corp.,* 150 F.R.D. at 479; *GAF Corp. v. Eastman Kodak Co.,* 85 F.R.D. 46, 51–52 (S.D.N.Y.1979).

■ The disclosure of any work product to Krim did not waive the privilege. AKOO and the Committee represented Krim's interest as a bondholder. It would have been reasonable to assume that Krim would not run to Circle K or Investcorp and disclose AKOO's opinion that the auction process was unfair. Further, a contrary rule would prevent a committee and its counsel from doing their job. A committee has an implied if not express duty to advise its constituents of the status of the case and respond to their reasonable inquiries. Those communications may involve recommendations regarding proposed plans or other matters. If counsel must remain guarded in those communications for fear of disclosing an opinion and waiving the work product, the creditors will ultimately suffer.

■ For the same reasons, Krim's deposition testimony did not waive any work product protection. First, it would be anomalous to hold that AKOO did not waive the privilege by disclosing work product to Krim because it reasonably believed that he would not turn it over to an adversary, but conclude that a waiver occurred because Krim acted contrary to that reasonable expectation. Second, as a non-client, Krim could not waive the privilege he did not hold. Third, neither AKOO nor the Committee, the holders of the privilege, are parties to this adversary proceeding, or attended the Krim deposition. It would be grossly unfair under these circumstances to conclude that Krim could waive the privilege through his deposition testimony when the holders of the privilege did not have the opportunity to object.

### b. Disclosure by Brecker

■ Brecker's deposition testimony raises a more significant issue. Brecker, as a partner in AKOO, could waive the privilege through disclosure. Implied waiver is based

ultimately on "fairness," *In re Sealed Case,* 676 F.2d at 817, and a court need not allow a privilege to stand when the proponent seeks to use it for a purpose that is inconsistent with the privilege. *Id.* at 818. The defendants maintain and I agree that Brecker disclosed his mental impressions and opinions at his deposition. He revealed his opinion and strategy regarding the connection between management incentives and his real concern: an inadequate sale price.[4] "[M]aterial is opinion work-product because it is 'reflective of a counsel's approach.'" Breckinridge L. Willcox, *Martin Marietta and the Erosion of the Attorney–Client Privilege and Work–Product Protection,* 49 Md.L.Rev. 917, 931–32 (1990) (quoting *United States v. Pollard (In re Martin Marietta Corp.),* 856 F.2d 619, 625 (4th Cir.1988), *cert. denied,* 490 U.S. 1011, 109 S.Ct. 1655, 104 L.Ed.2d 169 (1989)). That said, I must consider whether he thereby waived his right to assert work product to protect the three documents at issue.

In determining the scope of an implied waiver, the cases distinguish between opinion work product and non-opinion work product. Some hold that although waiver extends to all non-opinion work product involving the same subject matter, the doctrine of subject matter waiver does not extend to opinion work product. *Cox v. Administrator U.S. Steel & Carnegie,* 17 F.3d 1386, 1422 (11th Cir.), *modified on other grounds,* 30 F.3d 1347 (11th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 900, 130 L.Ed.2d 784 (1995); *United States v. Pollard (In re Martin Marietta Corp.),* 856 F.2d 619, 625–26 (4th Cir. 1988), *cert. denied,* 490 U.S. 1011, 109 S.Ct. 1655, 104 L.Ed.2d 169 (1989); *see Bowne of*

New York City, Inc. v. AmBase Corp., 150 F.R.D. at 485 (the unauthorized disclosure of work product results in the waiver of any privilege concerning non-opinion work product involving the same subject matter); *Bernstein v. Bernstein,* No. 91–0785 (RR), 1993 WL 184201 at *1 (E.D.N.Y. May 24, 1993). *But see United States v. Family Practice Assocs.,* 162 F.R.D. 624, 627 (S.D.Cal.1995) (stating, without citation to authority, that once the privilege is waived, there is no need to distinguish between opinion and non-opinion work product). *Marietta* explained that opinion work product receives greater protection under Rule 26(b)(3), and there is little danger that a litigant can make unfair, testimonial use of an attorney's thoughts and mental impressions. *In re Martin Marietta Corp.,* 856 F.2d at 626.

Other courts which decline to take the absolute view, still grant "particular solicitude" to opinion work product, *In re Kidder Peabody Sec. Litig.,* No. 94 Civ. 3954 (BSJ), 1996 WL 263030 at *15 (S.D.N.Y. May 17, 1996), and limit the disclosure to the extent necessary to avoid unfairness. *Alpex Computer Corp. v. Nintendo Co.,* 86 Civ. 1749 (KMW), 1994 WL 330381 at *2 (S.D.N.Y. July 11, 1994) (courts should "take care to extend the scope of the waiver only so far as necessary to ensure fairness to the litigants"); *see, e.g., Micron Separations, Inc. v. Pall Corp.,* 159 F.R.D. 361, 365 (D.Mass. 1995) (finding waiver where proponent had interjected issue of reliance on advice of counsel, but excepting from waiver work product consistent with that advice); *United States v. Rosenthal,* 142 F.R.D. 389, 394 (S.D.N.Y.1992) (declining to find subject mat-

---

4. In addition, AKOO produced a document containing a handwritten notation which, the defendants also argue, constitutes a waiver. AKOO had filed an appellate brief on behalf of the Committee, seeking to overturn the bankruptcy court's order approving an amendment to the stock purchase agreement. The brief attached a page from the debtor's draft disclosure statement intended to show newly revealed information regarding management's participation in the New Circle K equity. The attached page includes the following statement:

"*Other than those members of management* who will be granted equity incentive options in the Purchaser, the shareholders of the purchaser are:" [Emphasis added.]

Anthony Princi, an AKOO lawyer, circled this language and wrote on the page: "Explain in detail."

The defendants maintain that this statement, like the Brecker testimony, reveals AKOO's strategy on the management incentive/auction price issue. This notation is far less compelling than, and at most cumulative of, Brecker's testimony. In addition, the brief and annotated exhibit were filed long before Brecker's deposition in this adversary proceeding, yet no one, particularly the defendants, every asked him any question about it. This undercuts the recent claim of its critical nature.

ter waiver where there was no possibility of inconsistent testimonial use and the materials were not relevant or admissible); *Charlotte Motor Speedway, Inc. v. International Ins. Co.*, 125 F.R.D. 127, 130 (M.D.N.C.1989) (finding waiver where activities and advice of counsel were at issue).

■ I have examined the three documents at issue, and conclude that fairness does not require that I find a waiver. None of the documents refer to any factual work product; they consist entirely of opinion work product with regard to the management incentive issue. The memoranda are pure advocacy, and are consistent with Brecker's deposition testimony. The meeting notes also reflect concerns consistent with those expressed at his deposition. Thus, there is no danger that Brecker can give inconsistent testimony, and selectively disclose his opinions or mental impressions. Furthermore, the defendants already deposed Brecker in this adversary proceeding, asked him questions about management incentives and the auction price, and he answered fully. He has stated that nothing in the three documents refreshes his recollection regarding what he said (Brecker Aff. ¶ 9), and hence, would not open new avenues of questioning. In addition, the plaintiffs— who were not even Brecker's clients—have not relied on anything he said or did,[5] and his mental impressions are neither relevant nor admissible nor in issue. In short, the defendants have failed to make the required showing of unfairness to support the conclusion that AKOO waived its opinion work product by disclosure.

### 3. The Defendant's Need

■ All agree that the protection afforded work product is qualified. Under Rule 26(b)(3), the party seeking discovery can obtain non-opinion work product upon a showing of substantial need and the inability to obtain the substantial equivalent without undue hardship. *Accord Horn & Hardart*

*Co. v. Pillsbury Co.*, 888 F.2d 8, 12 (2d Cir.1989). The bar is raised even higher for opinion work product; a party seeking to discover opinion work product must show "extraordinary justification." *In re Sealed Case*, 676 F.2d at 809–10; *see Upjohn Co. v. United States*, 449 U.S. at 401, 101 S.Ct. at 688.

■ The defendants argue that independent of the waiver issue, they have made the requisite showing of need to discover the work product. I disagree. My analysis overlaps with the earlier analysis of the waiver issue. Having concluded that fairness does not demand production, I conclude, for the same reason, that the defendants have failed to show an "extraordinary justification" for qualifying the protection for opinion work product.

### C. Costs and Other Relief

■ Rule 45(c)(1) of the Federal Rules of Civil Procedure authorizes the court to impose an appropriate sanction against any party that issues a subpoena, but in so doing, fails to take reasonable steps to avoid imposing an undue burden on the subpoenaed party. A subpoena invokes the power of the court, and can disrupt the lives of non-parties. *Bowers v. Buchanan*, 110 F.R.D. 405, 406 (S.D.W.Va.1986). An attorney who issues an improper subpoena directly implicates the court and undermines it. *See United States v. Santiago–Lugo*, 904 F.Supp. 43, 48 (D.P.R.1995). Courts are therefore granted wide discretion to impose sanctions which penalize the wrongdoer, deter future abuse and compensate the injured. *Mann v. University of Cincinnati*, 152 F.R.D. 119, 126–27 (S.D.Ohio 1993).

■ A sweeping subpoena which requires a non-party to sift through virtually every document in its files is *prima facie* improper. *See In re Elec. Weld Steel Tubing Antitrust Litig.*, 512 F.Supp. 81, 84 (N.D.Ill. 1981). In my earlier decision, I ruled that

---

5. The defendants argue that the plaintiffs can only prove due diligence by showing what AKOO did. The plaintiffs disagree. In the event that the plaintiffs call Brecker as a witness, or attempt to use his testimony in a manner which is inconsistent with the purposes of the work prod-

uct privilege, the defendants can raise the issue with Judge Nielsen at that time. He can obviously review the matter, and if he agrees, strike the testimony or condition its admission upon the production of the work product and the opportunity to redepose Brecker.

the defendants' subpoena, served upon AKOO, was overly broad and unreasonable. It required AKOO to produce all documents relating to the case rather than those documents limited to the inquiry of management incentives under the debtor's plan. *S.N. Phelps v. Circle K Corp.*, slip op. at 21–22. Hence, it was improper. Nevertheless, I conclude that an award of sanctions is not warranted.

While the defendants served an unduly broad subpoena which relieved AKOO of its obligation to file a privilege log in response to it, AKOO "neutralized" the effect of the subpoena with a brief letter objection. Hence, it did not suffer any burden in attempting to comply. In addition, AKOO's objection did not propose a resolution, and it is clear to me that both parties required judicial intervention to craft a narrower subpoena. Thus, a substantial portion of the motion practice between the defendants and AKOO was made necessary by the seeming intransigence of both parties. Accordingly, awarding sanctions would confer a windfall on AKOO which, in my view, is undeserved.

The parties are directed to settle an order consistent with this opinion.