**In re EASTERN SYSTEMS, INC., Debtor.**

**Bankruptcy No. 87B–12551 (HCB).**

United States Bankruptcy Court, S.D. New York.

Aug. 1, 1990.

Sanford Rosen, New York City, for debtor.

Keck, Mahin & Cate by Jeffrey P. Meyer, Los Angeles, Cal., for NBS Systems, Inc.

## DECISION AND ORDER

HOWARD C. BUSCHMAN III, Bankruptcy Judge.

Eastern Systems, Inc. ("Eastern" or the "Debtor"), the debtor and debtor-in-possession herein, seeks a court order pursuant to Rules 3018(a) and 9006(b)(1) of the Federal Rules of Bankruptcy Procedure allowing NBS Systems, Inc. ("NBS" or the "Creditor"), the Debtor's largest unsecured creditor, to vote in favor of confirmation of the Debtor's plan, notwithstanding the expiry of the voting period and the fact that NBS had voted, within the statutory period, against confirmation.

NBS similarly seeks a court order allowing it to make a late change in vote, which would enable confirmation of a consensual plan, but proceeds under Rule 60(b)(6) of the Federal Rules of Civil Procedure in addition to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

For the reasons stated herein, the relief sought by the Debtor and NBS is denied.

### I

Eastern is a New York corporation that manufactures business forms and accessories. It filed for reorganization under Chapter 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Code") on December 30, 1987. Pursuant to Bankruptcy Rule 3017(c), this Court, by order dated November 19, 1989, set February 23, 1990, as the last day for holders of unsecured claims impaired by Eastern's proposed plan of reorganization, to vote to accept or reject the plan.

Prior to the deadline, Eastern's largest unsecured creditor, NBS, voted against Eastern's proposed plan of reorganization. With that vote, the plan could not be confirmed. After the deadline, Eastern's representatives contacted NBS. NBS subsequently expressed its desire to change its ballot to confirm the plan, thereby giving Eastern the requisite number of votes for confirmation. At the confirmation hearing held on May 17, 1990, after several adjournments, Eastern announced that it believed NBS sought to change its vote and requested the Court to allow NBS to do so. This Court took Eastern's request under advisement in order to rule prior to taking evidence on other issues, most notably the feasibility of the would-be-reorganized debtor under 11 U.S.C. § 1129(a)(11).

By motion served on July 10, 1990, to which no objection has been filed, and returnable August 1, 1990, NBS asserts that the cause of its failure to vote either to confirm the plan or to move for an enlargement of time before the expiration of the deadline was its own failure to obtain new counsel until the eve of the voting deadline, an act which NBS contends constitutes extraordinary circumstances or excusable neglect. Eastern cites the same facts.

In asserting that the Court is empowered to sanction the voting change, Eastern and NBS rely on Rule 3018(a) of the Federal Rules of Bankruptcy Procedure. Eastern further relies on Rule 9006(b). NBS also seeks relief pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure. No objection to the motion has been filed.

### II

It is given that the Court, regardless of the absence of objection, has an independent duty to satisfy itself as to compliance with each of the requirements of section 1129(a) and, if applicable, section 1129(b) of the Bankruptcy Code, prior to confirming a plan of reorganization. 11 U.S.C. §§ 1129(a), (b) (1986). *In re Prudential Energy Co.*, 58 B.R. 857, 862 (Bankr.S.D.N.Y.1986) (*citing In re N.S. Garrott & Sons*, 48 B.R. 13, 15 (Bankr.E.D.Ark.1984); *In re White*, 41 B.R. 227, 229 (Bankr.M.D.Tenn.

1984); *In re Toy & Sports Warehouse, Inc.*, 37 B.R. 141, 149 (Bankr.S.D.N.Y. 1984); *In re Economy Cast Stone Co.*, 16 B.R. 647, 650 (Bankr.E.D.Va.1981)).

The most significant of those requirements is satisfaction of the voting acceptance standards set forth in section 1126, as section 1129(a)(8) provides. By voting, creditors have the opportunity to accept or reject a plan in the knowledge that their and all other votes will be counted by number and amount. Rule 3018 implements these standards by requiring that votes are to be cast within the period set and that any request to change or withdraw an acceptance or rejection must be made within the period set for accepting or rejecting the plan. It provides in relevant part:

*A plan may be accepted or rejected by the following entities within the time fixed by the court pursuant to Rule 3017:* (1) any creditor whose claim is deemed allowed pursuant to § 502 of the Code or has been allowed by the court; (2) subject to subdivision (b) of this rule, any creditor who is a security holder of record at the date the order approving the disclosure statement is entered whose claim has not been disallowed; and, (3) an equity security holder of record at the date the order approving the disclosure statement is entered whose interest has not been disallowed. *For cause shown and within the time fixed for acceptance or rejection of the plan, the court after notice and hearing may permit a creditor or equity security holder to change or withdraw an acceptance or rejection.*

Fed.R.Bankr.P. 3018(a) (Emphasis added). Hence, on its face, Rule 3018(a) bestows only partial authority to allow changes in vote. Its application is limited to cases where the request for change is made before the expiration of the voting deadline. It thereby preserves an important feature of elections: once the polls are closed, the result is calculated and not to be changed, particularly by permitting the casting of votes with knowledge of the result or after influence by others.

Notwithstanding the command of Rule 3018(a), in three cases cited to us and which we have found, courts have indicated that they will allow creditors to amend their ballots after the voting deadline has passed, upon a showing of exceptional circumstances: *In re Jartran, Inc.*, 44 B.R. 331, 363 (Bankr.N.D.Ill.1984); *Texas Extrusion Corp. v. Lockheed Corp. (In re Texas Extrusion Corp.)*, 844 F.2d 1142, 1163 (5th Cir.1988), *cert. denied*, 488 U.S. 926, 109 S.Ct. 311, 102 L.Ed.2d 330 and *In re American Solar King Corp.*, 90 B.R. 808 (W.D.Tex.1988). In *Jartran*, debentureholders requested leave to amend a ballot rejecting the debtor's plan to one which would provide the vote required for confirmation after the voting deadline had passed. Those creditors had reached a separate settlement agreement with the debtor, 44 B.R. at 347, and no longer wished to oppose the plan. Even though the language of Rule 3018 appeared to bar the change of vote from rejection to acceptance, the court was reluctant to rule that

... the exercise of judicial discretion concerning a tardy change or withdrawal of vote is completely precluded by the language of Rule 3018. There may be exceptional circumstances which in light of the spirit of Chapter 11 to promote consensual plans, would warrant such a change notwithstanding the unequivocal language of the Rule.

44 B.R. at 363. Nevertheless, the court held that no "exceptional circumstances" existed to warrant an extension of time for amending the ballot in that case because the plan was in a cram-down posture with respect to the particular class to which the debentureholders belonged, regardless of the outcome of their vote, and the request to change the vote was the result of an outside settlement agreement concluded with the debtor. Such agreements go against public policy, seemingly because of the possibility of collusion. 44 B.R. at 363.

In *Texas Extrusion*, cited by counsel as supporting approval under Rule 3018(a) of a late change, the debtors were a husband and wife and two corporations they controlled. The wife's bankruptcy petition was filed after the other three. She de-

layed in filing schedules of assets and liabilities and failed to inform the plan proponents of a federal government agency claim against her. Thus the government agency's claim against the estate was not included in the plan.

The government agency voted to reject the plan. The plan was subsequently revised to reflect a settlement with the agency. Without any discussion of Rule 3018(a), the Fifth Circuit upheld the decision allowing the creditor to file a changed late ballot resulting in the confirmation of the modified plan, 844 F.2d at 1162, relying primarily on the debtor's failure to afford notice of the existence of the claim. Hence *Texas Extrusion* can hardly be read as a broad warrant to go beyond Rule 3018(a).

In *American Solar King* the court permitted, under Rule 3018(a), a secured creditor, the sole member of a class, to change its vote from a rejection to an acceptance of the plan at a confirmation hearing after the creditor and the debtor had negotiated a settlement of their differences, with the debtor agreeing to modify the plan. In so ruling, the court held that the modification was not material to other creditors and thus did not require that the plan be put to a new creditor vote. *See* 11 U.S.C. § 1127. Thus, *Solar King* concerned a change of vote by the sole member of a class with respect to a plan that was modified in a way immaterial to others. Rule 3019 provides no new vote need be taken with respect to such a modification.[1] The finality policy of Rule 3018(a) as it applies to multimember classes is hardly impacted in such cases. Nevertheless, the *Solar King* court stated that to serve the intent of fostering consensus, "Rule 3018(a) must not be applied in a wooden, mechanical fashion, lest it serve only as a device to aid recalcitrant creditors in their quest to selfishly scuttle otherwise equitable reorganizations on a mere technicality." 90 B.R. at 827. This statement was *dicta*. Rule 3019 provides for no new vote on an immaterial modification or a modification accepted by those adversely affected by it.

In sum, these cases amount to one court stating that there might be exceptional circumstances permitting a change of vote after the deadline but refusing the change, *Jartran;* another permitting a change in highly exceptional circumstances with only bare discussion, *Texas Extrusion;* and a third calling for flexibility in circumstances where another rule permits a creditor to accept a modification of a plan without resolicitation, *American Solar King.*

From these cases, however, NBS would draw a rule, *citing* 8 R. Ayers, R. Broude, J. Gewertz, D. Lynn, H. Sommer, B. Zaretsky, *Collier on Bankruptcy* ¶ 3018.03 (15th ed. 1990), that "[a]s long as the change in vote is not tainted, the change of vote should usually be permitted. The court must only insure that the change is not improperly motivated." This test, however, pertains only to changes in vote submitted *before* the expiry of the voting deadline. *Id.* Changes submitted after the expiry date are barred by the rule or, if these cases are to be followed, are subject to the extraordinary or exceptional circumstances test articulated in *Jartran.*

■ Even were Rule 3018(a) to be construed to permit a late vote change, the circumstances asserted by NBS and Eastern fall far short of the circumstances presented in *Texas Extrusion,* where the court permitted a late change, and even far short of the circumstances in *Jartran,* where the court refused. NBS alleges it retained a new law firm approximately two days before the voting deadline; in order to preserve NBS's right to reject the plan, it voted to reject; new counsel spoke with counsel for Eastern who told him there

---

1. Rule 3019 provides:
    After a plan has been accepted and before its confirmation, the proponent may file a modification of the plan. If the court finds after hearing on notice to the trustee, any committee appointed under the Code and any other entity designated by the court that the proposed modification does not adversely change the treatment of the claim of any creditor or the interest of any equity security holder who has not accepted in writing the modification, it shall be deemed accepted by all creditors and equity security holders who have previously accepted the plan.
    Fed.R.Bankr.P. 3019.

would be no modification to enhance the rights of the unsecured creditors; counsel for NBS relayed that information to his client which then submitted a late change in vote; and finally, NBS received no consideration to submit the changed vote. These allegations amount to nothing more than that a creditor voted to reject in order to leverage its claim, failed to do so and now wishes to change its vote. The circumstances are of its own making, hardly extraordinary. In this case at least, Rule 3018(a) is to be enforced as it is written: changes may be made only before the deadline.

## III

■ Equally misplaced is the movant's reliance on the excusable neglect doctrine of Bankruptcy Rule 9006(b)(1) and Rule 60(b)(6) of the Federal Rules of Civil Procedure incorporated by Bankruptcy Rule 9024. Courts interpret excusable neglect as "the failure to timely perform a duty [where such failure] was due to circumstances beyond the reasonable control of the person whose duty it was to perform." [2] *In re Sasson Jeans, Inc.* 90 B.R. 608, 614 (Bankr.S.D.N.Y.1988) (*quoting In re South Atlantic Financial Corp.*, 767 F.2d 814, 817 (11th Cir.1985) (no excusable neglect where movant's failure to perform his duty was not beyond his own control)); *see also Hanson v. First Bank of South Dakota, N.A.*, 828 F.2d 1310, 1315 (8th Cir.1987) (no excusable neglect where delay in creditor's late ballot was due to events within the creditor's control); *In re Figueroa*, 33 B.R. 298, 301 (Bankr.S.D.N.Y.1983) (no excusable neglect where failure to file dischargeability complaint on time was due to breakdown in movant's internal procedures). In other words, when the acts of the party moving for an extension of time are the result of a freely chosen course of action, excusable neglect does not exist. *See In re South Atlantic Financial Corp.*, 767 F.2d 814, 818 (11th Cir.1985), *cert. denied*, 475 U.S. 1015, 106 S.Ct. 1197, 89 L.Ed.2d 311 (1986) (no excusable neglect where creditor's counsel failed to determine whether proof of claim had already been filed by prior counsel); *In re Gem Rail Corp.*, 12 B.R. 929, 932 (Bankr.E.D.Pa.1981) (no excusable neglect because debtor's failure to file statements and schedules resulted from freely chosen course of action); *In re Oakton Beach & Tennis Club*, 9 B.R. 201, 205 (Bankr.E.D.Wis.1981) (even if creditor failed to file proof of claim relying on misinformation, no excusable neglect because decision not to file was creditor's own chosen course of action).

Here, NBS has made its own proverbial bed, and no longer wishes to lie in it. NBS cannot undo the result of its own chosen course of action by asserting a defense of excusable neglect because the timing of retaining new counsel was within the control of NBS and because the action resulting in the outcome now deemed unfavorable to the creditor, casting a vote against the plan, was its own chosen course of action.

While it is well established that Rule 60(b)(6) [3] is to be "liberally applied" in a proper case, the standard for determining whether a case is proper is very difficult to meet. *United States v. Cirami*, 563 F.2d 26, 32 (2d Cir.1977). The movant under Rule 60(b)(6) must show "exceptional circumstances or extreme hardship." *See* 563 F.2d at 30. The Second Circuit, in *Cirami*, considered the tests of extreme hardship and extraordinary circumstances were met when the movant could make out a strong case that he "had a meritorious defense

---

2. Bankruptcy Rule 9006(b)(1) provides in relevant part:

   [W]hen an act is required or allowed to be done at or within a specified period ... the court for cause shown may at any time in its discretion on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.
   Fed.R.Bankr.P. 9006(b)(1).

3. Civil Procedure Rule 60(b)(6) provides in relevant part:

   On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for ... any other reason justifying relief from the operation of the judgment [not enumerated in (1)–(5) ].
   Fed.R.Civ.P. 60(b)(6).

which would have been asserted but for a truly extraordinary turn of events ... which resulted in substantial injustice to him". 563 F.2d at 35. The Court held that the "constructive disappearance" of the movant's attorney, due to mental illness, could be considered extraordinary circumstances warranting relief and remanded the matter to district court. *See also Amoco Overseas Oil Co. v. Compagnie Nationale Algerienne de Navigation,* 605 F.2d 648 (2nd Cir.1979), 459 F.Supp. 1242, 1249–50 (S.D.N.Y.1978) (defendant's motion for vacatur under Rule 60(b)(6) denied for failure to meet test for relief requiring showing of extraordinary circumstances or extreme hardship where hardship claimed, losing funds through execution of default judgment, was insufficient to meet the test); *Dreieck Finanz, A.G. v. Sun,* 1990 WL 48071, U.S.Dist.1990 Lexis 3861, 4 (S.D.N.Y. April 10, 1990) (relief from default judgment under Rule 60(b)(6) requires showing a very high standard of extraordinary circumstances or extreme hardship); *Fustok v. Conticommodity Services, Inc.,* 122 F.R.D. 151 (S.D.N.Y.1986), *aff'd,* 873 F.2d 38 (2d Cir.1989) (motion to vacate amended default judgment denied because of, *inter alia,* failure to satisfy extraordinary circumstances standard of 60(b)(6) where outcome unfavorable to movant was result of tactical decision made by movant). NBS's late retention of new counsel does not satisfy this test of extraordinary circumstances. Thus Rule 60(b)(6) is not available to relieve NBS of this Court's prior order setting the voting bar date.

For the foregoing reasons, the motions must be, and hereby are, denied. Since the Debtor concedes that it cannot confirm its plan without acceptance of the class of unsecured creditors, confirmation of that plan must also be, and hereby is, denied.

It is SO ORDERED.