**In re The DREXEL BURNHAM LAMBERT GROUP, INC., et al., Debtors.**

**LAMBERT BRUSSELS ASSOCIATES LIMITED PARTNERSHIP, Appellant,**

v.

**The DREXEL BURNHAM LAMBERT GROUP, INC., et al., Appellees.**

**Nos. 90 Civ. 6954 (MP), 92 Civ. 2173 (MP). Bankruptcy No. 90 B 10421 (FGC).**

United States District Court, S.D. New York.

April 23, 1992.

Edwin G. Schallert, Debevoise & Plimpton, New York City, for Lambert Brussels Associates Ltd. Partnership.

Alan B. Miller, Weil, Gotshal & Manges, New York City, for The Drexel Burnham Lambert Group Inc., et al.

Claude D. Montgomery, Milgrim Thomajan & Lee P.C., New York City, for The Official Committee of Equity Sec. Holders.

MILTON POLLACK, Senior District Judge.

Lambert Brussels Associates Limited Partnership ("LBA"), a common and junior preferred stockholder in Drexel Burnham Lambert Group, objects to the confirmation of the Second Amended and Restated Joint Plan of Reorganization of the Debtors ("Plan") because a claimant class, Drexel Burnham Lambert Group Class 6C, that will share in the distributions as a quasi-creditor class was not subordinated to the level of common stock, and the distributions of Plan securities thus unfairly discriminates against the interest of equity common stockholders.

Although the debtor estates are hopelessly insolvent, the Plan provides each stock equity interest-holder class that supports the Plan with warrants to purchase interests in the reorganized enterprise, New Street. Should members of the equity class reject the Plan, objectors will not receive any warrants under the Plan. LBA, which is the sole member of Drexel Burnham Lambert Group Class 8, a stock equity class, voted against the Plan and now asserts that the Plan unfairly discriminates against its class by denying the warrants to it.

Bankruptcy Judge Francis G. Conrad overruled LBA's objections in two separate opinions filed March 5, 1992. 138 B.R. 717, 138 B.R. 714. LBA appeals.

## I. *The Bankruptcy Court Did Not Abuse Its Discretion in Approving the ERISA Settlement*

The complex factual background of these bankruptcy proceedings has been outlined in the previous opinions of this Court and of the Bankruptcy Court, and thus need not be detailed here again.

The essence of LBA's primary objection is that employee-shareholder ERISA/compensation claims assigned to Drexel Burnham Lambert Group Class 6C have been assigned a priority over LBA's Class 8 stock equity interests, but should be subordinated under 11 U.S.C. § 510(b) to the level of common stock because the claims in Class 6C are not really in a creditor status but are based on the issuance, sale or purchase of common stock. Appellant contends that failure to subordinate Class 6C claims under § 510(b) to ordinary stock equity status allegedly renders the Plan

unconfirmable under 11 U.S.C. § 1129(a)(1), and is unfairly discriminatory under 11 U.S.C. § 1129(b)(1).

LBA makes this objection in the face of the bankruptcy court's approval of a settlement of a sharply contested proceeding on the employee-shareholder ERISA/compensation claims ("ERISA Settlement") that established the distribution to and priority of Class 6C claims over LBA's Class 8 stock equity interest. The employee ERISA/compensation claims covered the spectrum from indemnification to breach of employment contracts to adjudication of the status of deferred compensation. Under the ERISA Settlement, Class 6C is denominated as a *creditor* class and will receive $26.7 million in exchange for a release of all related claims against the debtors and their officers, directors, employees or agents, and in further exchange for a renunciation of rights to subordinate other creditors' claims. Approval of the ERISA Settlement was an express condition precedent to Plan confirmation.

Judge Conrad considered the length and cost of litigation of the ERISA claims, the factual and legal uncertainty of the outcome of those claims, the significant and substantial direct and indirect potential exposure to the debtors, the settlement benefits to Class 6A, 6B and 6C claimants, the arm's length nature of the negotiations, the value of the releases exchanged, the allocation of Plan securities among the creditors, the possibility that some of the disputed claims could be subject to § 510 subordination, the effect the ERISA Settlement would have on the Intercompany Settlement and the Securities Litigation Claims Settlement and therefore, the critical role the ERISA Settlement plays in confirmation of the Plan. (Memorandum of Decision on Plan Confirmation, filed March 10, 1992, at 57–63). Not a single Plan proponent or non-employee creditor objected to the ERISA Settlement.

The bankruptcy court had authority under Bankr.R. 9019 to approve settlements of legitimate disputes in the bankruptcy, and did so after finding that the provisions of the instant settlement each "fall well within a range of reasonableness." (Memorandum of Decision on Plan Confirmation at 63). *See In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir.), *cert. denied sub nom., Cosoff v. Rodman*, 464 U.S. 822, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983).

■ The Bankruptcy Court's conclusions of law must be reviewed *de novo. In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 988 (2d Cir.1990), *cert. denied sub nom., Air Line Pilots Ass'n, International v. Shugrue*, —— U.S. ——, 112 S.Ct. 50, 116 L.Ed.2d 28 (1991). This Court has conducted the required independent review. Any conclusions of fact made by the Bankruptcy Court will only be disturbed if clearly erroneous. Bankr.R. 8013. When reviewing a decision approving a compromise and settlement, however, a court is governed by an abuse of discretion standard. *In re Cinema City Car Wash, Inc.*, No. 90–55771, 935 F.2d 273 (table) 1991 WL 99158, at *1 1991 U.S. App. LEXIS 12631, at *2–3 (9th Cir. filed June 10, 1991), *Depo v. Chase Lincoln First Bank, N.A.*, 77 B.R. 381, 383–84 (N.D.N.Y.1987), *aff'd mem.*, 863 F.2d 45 (2d Cir.1988), *cf. Grant v. Bethlehem Steel Corp.*, 823 F.2d 20, 22 (2d Cir. 1987) (non-bankruptcy matter).

The bankruptcy judge is " 'uniquely positioned to consider the equities and reasonableness of a particular compromise,' " and his evaluation and acceptance of a compromise settlement are entitled to deference on a review. *In re Energy Co-op, Inc.*, 886 F.2d 921, 926 (7th Cir.1989) (citation omitted).

■ Without delving into an unnecessary examination of the applicability § 510(b) to ERISA claims,[1] this Court holds that the bankruptcy court did not abuse its discretion in considering that the disputed class owned distinct securities possessing different legal rights from those in Class 8

---

**1.** This Court finds, however, that LBA has standing to make such a challenge. 11 U.S.C. § 1109(b); *In re Toy & Sports Warehouse, Inc.*, 37 B.R. 141 (Bankr.S.D.N.Y.1984) (impaired shareholder class voting against plan that would wipe out their equity interest had standing to object to fairness of plan, though objections overruled).

and approving the ERISA Settlement and Plan which classified the varied mix of employee-shareholder claims as unsecured creditor claims, not common stockholder claims subject to § 510(b).

"It is well established that settlement agreements are favored under the law especially in bankruptcy matters." *In re Joint Eastern and Southern District Asbestos Litigation*, 129 B.R. 710, 861 (E.D.N.Y. and S.D.N.Y.1991). LBA has admitted that the issue was "exhaustively litigated in the Bankruptcy Court by LBA and the Equity Committee" and "was squarely presented for decision" (LBA Reply Brief at 2) and that it "does not contend that Section 510(b) issues can never be resolved by settlement." (LBA Reply Brief at 2).

The employee-shareholder creditors of Class 6C have been found in the settlement to be differently situated from the Class 8 stock claimants, thus, there is no issue of unfair discrimination under § 1129(b). The problem with LBA's unfair discrimination claim has been stated most succinctly by LBA itself: "*If* the employee-shareholder claims should be treated the same as LBA's stock, the grossly disparate treatment of Class 6C and Class 8 cannot withstand scrutiny." (LBA Reply Brief at 19; emphasis added). However, "[w]here legal claims are sufficiently different as to justify a difference in treatment under a reorganization plan, reasonable differences in treatment are permissible," *In re Bryson Properties XVIII*, 129 B.R. 440, 445 (M.D.N.C.1991). *See also In re Buttonwood Partners, Ltd.*, 111 B.R. 57, 62 (Bankr.S.D.N.Y.1990). Whether this Court views § 1129(b) as narrowly applicable to dissenting classes whose legal rights are intertwined with others' or broadly applicable to separate classes with "similar" claims that are treated differently, *In re Future Energy Corp.*, 83 B.R. 470, 492–93 (Bankr.S.D.Ohio 1988), there is no unfair discrimination here.

II. *LBA's Objection to the Warrant Provision for Acceptance of the Plan Has No Merit*

■ The LBA objection to the voting provisions under § 1129(b) is based on the presumption that the Plan treats Class 8 differently from equity Classes 7 and 9, and that such differential treatment is unfair. LBA's initial assumption, however, is unfounded. The Plan gives each equity class the option of voting for the Plan for which it will receive warrants, or casting a vote against the Plan which is not accompanied by warrants.

The Plan provides that:

on the Consummation Date, the holders of DBL Group Class 8 Equity Interests that are Allowed Equity Interests shall in the aggregate be entitled to receive between 46.1% and 48.1% of the New Street Warrants which shall entitle them to purchase ... shares of common stock of New Street ... Notwithstanding the foregoing, if (i) DBL Group Class 8 fails to accept the Plan, no holder of a DBL Group Class 8 Equity Interest shall be entitled to any distribution under the Plan on account of such Equity Interest and the New Street Warrants otherwise distributable to holders of DBL Group Class 8 Equity Interests shall be canceled.

Plan at Art. VI, ¶ 6.11. Corresponding terms exist for holders of DBLG Class 7 and 9 interests. *Id.* at ¶¶ 6.10 and 6.12.

■ Classes 7 and 9 accepted the Plan and will receive the warrants accompanying their vote. LBA made its choice, voted against the Plan and will not receive warrants as part of the distributable benefits under the Plan, which settles an enormously complex and expensive litigation. Incentives for agreeing to bankruptcy resolutions are certainly not *per se* unfairly discriminatory. *Compare In re Western Real Estate Fund, Inc.*, 75 B.R. 580, 586 (Bankr.W.D. Okla.1987) *with In re Pine Lake Village Apartment Co.*, 19 B.R. 819, 831 (Bankr.S.D.N.Y.1982).

■ LBA voluntarily chose the path that fails to yield warrants for the purchase of New Street stock. This choice cannot be reversed without a consensual agreement between LBA and the Plan Proponents subject to the approval of the Bankruptcy Court, or, a showing of cause for permitting LBA to change its vote.

The Plan provides that:

After the entry of the Confirmation Order, the Plan Proponents may, upon order of the Bankruptcy Court, unanimously agree to amend or modify the Plan in accordance with Section 1127(b) of the Bankruptcy Code, or to remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purposes and intent hereof.

Plan at Art. XIII, ¶ 13.2.

Bankruptcy Rule 3018(a), a recently modified Rule, now provides that:

> ... for cause shown, the court after notice and hearing may permit a creditor or equity security holder to change or withdraw an acceptance or rejection [of a plan].

The Rule removes the previous limitation of time imposed on such changes.

■ However, the matter is now out of the hands of this Court. LBA has two options before it: First, LBA may request the Plan Proponents to agree to a consensual arrangement amending the warrant provision, an amendment allowed by Article XIII of the Plan. Second, LBA may apply to the Bankruptcy Court for permission to change its vote on the Plan, as permitted under Bankr.R. 3018(a). While prior law forbade a vote change at such a late date, *see, e.g., In re Eastern Systems, Inc.,* 118 B.R. 223 (Bankr.S.D.N.Y.1990), last year's amendment now permits change or withdrawal of a vote whether or not the time fixed for voting has expired. *In re MCorp Financial, Inc.,* 137 B.R. 237 (Bankr.S.D.Tex.1992).

At oral argument, counsel for the debtors and for the Equity Committee offered LBA warrants to settle the matter. A similar offer was previously declined before this appeal. The debtors' and Equity Committee's counsel stated that the Plan Proponents might be willing to agree to amend the Plan to permit LBA to receive its unassigned and canceled warrants, subject to approval of the Bankruptcy Court. LBA, thus, as a significant figure in the Drexel organization, with a substantial presence on the board of directors, would be able to share in the benefits of success of New Street in the future.

At this juncture, the law offers no relief to LBA and the facts and circumstances point away from the exercise of any discretion in its favor regarding the warrants, if indeed this Court has the power to exercise such discretion. LBA is offered possible relief by prompt action or negotiation with the Plan Proponents. If LBA or the Plan Proponents bring this matter before the Bankruptcy Court, the Bankruptcy Judge will have to proceed with the awareness that this Court has found no legal reason for indulgence. However, an erroneous conclusion on unsettled law as to the warrants may have influenced LBA's position with respect to the Plan. Thus, under all the facts and circumstances, the Plan Proponents, on a consensual basis, may choose to afford some relief to LBA without prejudice to the Plan beneficiaries.

The Court has independently reviewed the controversy. The ruling appealed from was not clearly erroneous and there was no abuse of discretion on the part of the Bankruptcy Judge.

The orders appealed from are affirmed.