**IN RE: AWTR LIQUIDATION INC., Debtor**

**Solution Trust, as Trustee of the AWTR Liquidation Trust, Plaintiff,**

**v.**

**2100 Grand LLC, Lee Berger, Prashant Buyyala, CCC Diagnostics LLC, Raymond Feeney, Keith Goldfarb, John Patrick Hughes, Rhythm & Hues Sdn. Bhd, Pauline Ts'o, David Weinberg, Defendants.**

Case No.: 2:13–bk–13775–NB
Adv No: 2:15–ap–01095–NB

United States Bankruptcy Court, C.D. California, **Los Angeles Division.**

Argued Date: September 1, 2015, Time: 2:00 p.m., Courtroom: 1545

Signed March 11, 2016

Todd M. Arnold, Gary E. Klausner, Levene, Neale, Bender, Yoo & Brill L.L.P, Los Angeles, CA, Angela J. Somers, Reid Collins & Tsai LLP, New York, NY, for Plaintiff.

Brian E. Shear, Scott J. Spolin, Spolin Cohen Mainzer LLP, Manhattan Beach, CA, James Andrew Hinds, Jr., Torrance, CA, John B. Marcin, Marcin Lambirth LLP, Keith C. Owens, Venable LLP, Los Angeles, CA, Michael K. Maher, Maher & Maher, Orange, CA, Joshua T. Foust, Mintz Levin, San Francisco, CA, for Defendants.

## OPINION ON JURISDICTION AND AUTHORITY, AND RELATED MATTERS

Neil W. Bason, United States Bankruptcy Judge

### I. INTRODUCTION

The factual and procedural background is set forth in the concurrently issued Opinion On Directors' And Officers' Duties Upon Insolvency, And Related Issues. Capitalized words have the meanings set forth in that opinion.

### II. JURISDICTION, AUTHORITY, AND OTHER PRELIMINARY ISSUES

■ This Bankruptcy Court has an independent duty to examine its jurisdiction and authority. *See In re Rosson,* 545 F.3d 764, 769 n. 5 (9th Cir.2008) (jurisdiction); *In re Pringle,* 495 B.R. 447, 455 (9th Cir. BAP 2013) (authority). Although "jurisdiction" and "authority" sound very similar, the Supreme Court has distinguished between (A) bankruptcy courts' broad subject matter jurisdiction and (B) their narrower constitutional and statutory authority to issue *final* judgments or orders, as opposed to issuing *proposed* findings of fact and conclusions of law that are subject to *de novo* review by an Article III Court. *See Wellness Int'l Network, Ltd. v. Sharif,* —— U.S. ——, 135 S.Ct. 1932, 191 L.Ed.2d 911 (2015); *Stern v. Marshall,* 564 U.S. 462, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011); *In re Bellingham Ins. Agency, Inc.,* 702 F.3d 553, 567 (9th Cir.2012), *aff'd sub nom Executive Benefits Ins. Agency v.*

*Arkison*, —— U.S. ——, 134 S.Ct. 2165, 189 L.Ed.2d 83 (2014).

For the reasons set forth below, this Bankruptcy Court concludes that it has subject matter jurisdiction on all claims, and has the authority to issue final judgments or orders on pretrial matters that do not involve factual findings such as the present motions. In addition, this Bankruptcy Court has the authority to issue final judgments or orders, including factual findings, on (1) the plaintiff's objections to the Directors' claims (including equitable subordination) and (2) the avoidance claims against the Primary Directors. To the extent that this Bankruptcy Court does not have the authority to issue a final judgment or order, the accompanying opinion should be deemed to be proposed findings of fact and conclusions of law for *de novo* review by an Article III Court.

### A. Subject Matter Jurisdiction

Bankruptcy courts are "units" of the federal district courts, to which all bankruptcy proceedings have been referred. *See* 28 U.S.C. § 151; Cent. Dist. Cal. General Order No. 13–05; LBR 5011–1(a). As such, this Bankruptcy Court has jurisdiction over all civil proceedings (1) "arising under title 11," *i.e.*, any proceedings to enforce rights created by the Bankruptcy Code, (2) "arising in" a bankruptcy case, *i.e.*, other proceedings that would not exist outside a bankruptcy case, such as case administration, or (3) "related to" a bankruptcy case, *i.e.*, any proceedings the outcome of which could "conceivably" have any effect on the bankruptcy estate. *See* 28 U.S.C. §§ 157(a), 1334(b); *In re Harris*, 590 F.3d 730, 737 (9th Cir.2009); *In re Marshall*, 600 F.3d 1037, 1054 (9th Cir. 2010); *In re Fietz*, 852 F.2d 455, 457 (9th Cir.1988) (adopting "related to" test of *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3rd Cir.1984)) (the "related to" test is not quite as broad as it sounds, based on the actual holding of *Pacor*, but is sufficiently broad for present purposes).

█ The complaint's claims for avoidance and recovery under §§ 547, 548 and 550 all "arise under" the Bankruptcy Code. In contrast, the complaint's avoidance claims against the Directors under State law do not "arise under" the Bankruptcy Code, nor do its claims for breach of fiduciary duty, waste, and unjust enrichment. All of those claims also can exist outside of the bankruptcy case so they do not "arise in" this case within the meaning of the statute. As to those claims this Bankruptcy Court only has "related to" jurisdiction (which, as discussed below, bears on whether this Bankruptcy Court can only issue proposed findings of fact and conclusions of law).

█ The complaint's objections to the Directors' claims, including both allowance generally (11 U.S.C. § 502) and equitable subordination (11 U.S.C. §§ 502, 510), are quintessentially "arising under" proceedings. They consist of determining the parties' "hierarchically ordered claims to a pro rata share of the bankruptcy res." *Stern*, 131 S.Ct. 2594, 2614 (quoting *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 56, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989)) (discussing the non-jurisdictional issue of what proceedings are "core," but the same concept presumably applies to jurisdictional issues because the Court interpreted statutory "core" proceedings to be coterminous with statutory "arising in" and "arising under" jurisdiction. *Id.* at 2605.).

In short, this Bankruptcy Court has subject matter jurisdiction, although as to some of the complaint's claims it has only "related to" jurisdiction.

### B. Authority to Issue Final Judgments or Orders

This Bankruptcy Court's authority to issue final judgments or orders is governed

by both (1) a federal statute and (2) the United States Constitution. Unfortunately, the analysis is not easy.

### 1. Statutorily "core" proceedings

■ Bankruptcy courts have the statutory authority to issue final judgments or orders in "core" proceedings. 28 U.S.C. § 157(b)(2). Congress used that terminology in an attempt to track the Supreme Court plurality's decision in *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 71, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).

The statutory list is non-exclusive (28 U.S.C. § 157(b)(2)) but the courts have been careful to interpret the statute and its "catchall" provisions narrowly, and they "have considered factors such as whether the rights involved exist independent of title 11, depend on state law for their resolution, existed prior to the filing of a bankruptcy petition, or were significantly affected by the filing of the bankruptcy case." *In re Cinematronics, Inc.*, 916 F.2d 1444, 1450 n. 5 (9th Cir.1990). *See also In re Castlerock Props.*, 781 F.2d 159 (9th Cir.1986). This court also bears in mind that a "determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law." 28 U.S.C. § 157(b)(3).

The complaint's avoidance actions are all statutorily "core." 28 U.S.C. § 157(b)(2)(F) & (H). As for the complaint's claims against the Directors for breach of fiduciary duty, waste, and unjust enrichment, they arguably could be interpreted to come within some of the broader statutory definitions of "core" proceedings, but such a reading would be too broad. That would run counter to both the Supreme Court's interpretation of statutory "core" proceedings, to be coterminous with statutory "arising in" and "arising under" jurisdiction (*Stern*, 131 S.Ct. 2594, 2605), and the Ninth Circuit's narrow interpreta-

tion of the "catchall" definitions of core proceedings (*Cinematronics*, 916 F.2d 1444, 1450 n. 5; *Castlerock*, 781 F.2d 159). As for the final category of claims in the complaint—allowance of the D & O claims, including subordination issues—those are statutorily core. *See* 11 U.S.C. §§ 502, 510; 28 U.S.C. § 157(b)(2)(B) & (*O*).

### 2. Constitutionally "core" proceedings

On the one hand, the Supreme Court has directed the lower courts not to rule a statute unconstitutional (in this case 28 U.S.C. § 157(b)) except to the extent truly necessary. *See, e.g., Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450–51, 128 S.Ct. 1184, 170 L.Ed.2d 151 (2008); *Boos v. Barry*, 485 U.S. 312, 331, 108 S.Ct. 1157, 99 L.Ed.2d 333 (1988); *Regan v. Time, Inc.*, 468 U.S. 641, 652, 104 S.Ct. 3262, 82 L.Ed.2d 487 (1984).

On the other hand, to safeguard "individual liberty and separation of powers" there are constitutional limits on the authority of Bankruptcy Judges, who are appointed under Article I instead of Article III of the Constitution, to issue final judgments and orders. *Stern*, 131 S.Ct. 2594, 2615. In analyzing those limits the Supreme Court has focused primarily on whether the "public rights" exception to Article III applies. *See, e.g., id.* at 2611–15 & 2618–19 (plurality opinion).

One definition of "public rights" is that if " 'it depends upon the will of [C]ongress whether a remedy in the courts shall be allowed at all' [then] Congress could limit the extent to which a judicial forum was available." *Stern*, 131 S.Ct. 2594, 2612 (quoting *Murray's Lessee v. Hoboken Land & Imp. Co.*, 59 U.S. 272, 18 How. 272 at 284, 15 L.Ed. 372 (1855)). For example, a bankruptcy discharge arguably is a matter of public rights because Congress need not provide any discharge at all. The same reasoning arguably could apply more broadly, because Congress need not enact

any bankruptcy laws at all. At one point the Supreme Court stated that "the restructuring of debtor-creditor relations, which is at the core of the federal bankruptcy power ... may well be a 'public right.'" *Marathon*, 458 U.S. 50, 71, 102 S.Ct. 2858 (plurality opinion).

More recent decisions, however, have expressly declined to endorse such a broad general rule. *See Stern*, 131 S.Ct. 2594, 2614 n. 7 (plurality opinion); *Bellingham*, 702 F.3d 553, 561 (acknowledging "demise" of general rule that controversies at the "core of the bankruptcy process implicated public rights"). As the Supreme Court has acknowledged, its reasoning has not been "entirely consistent." *Stern*, 131 S.Ct. 2594, 2611 (plurality); *and see id.* at 2621 (Scalia, J., concurring). Nevertheless, the *Stern* plurality has articulated two alternative tests to determine when a Bankruptcy Judge can issue a final judgment or order:

> ...Congress may not bypass Article III simply because a proceeding may have some bearing on a bankruptcy case; *the question is whether the action at issue* [a] *stems from the bankruptcy itself or* [b] *would necessarily be resolved in the claims allowance process.* [*Stern*, 131 S.Ct. 2594, 2618 (emphasis added, citation omitted) ]

These two alternatives are examined below.

a. **Constitutional authority to adjudicate claims that "stem[ ] from the bankruptcy itself"—if there is a jury right, then there is a right to proceed before an Article III Judge**

▪ This first test—whether the action at issue "stems from the bankruptcy itself" (*Stern*, 131 S.Ct. 2594, 2618)—confusingly sounds very similar to the pre-*Stern* test: whether the controversy at issue is at the "core of the bankruptcy process." *Bellingham*, 702 F.3d 553, 561. The Ninth Circuit fortunately has ex-

plained, after a careful review of *Granfinanciera, Stern*, and other Supreme Court cases, that the difference is whether there is a jury right:

> *Stern* fully equated bankruptcy litigants' Seventh Amendment right to a jury trial in federal bankruptcy proceedings with their right to proceed before an Article III judge. [*Bellingham*, 702 F.3d 553, 563]

▪ Under this first *Stern* test, a bankruptcy court lacks the authority to issue final judgments or orders on fraudulent transfer and preference actions because jury rights apply to both types of actions. *See Langenkamp v. Culp*, 498 U.S. 42, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990) (jury right for preference actions); *Bellingham*, 702 F.3d 553, 565 (jury right for fraudulent transfer actions). *See also* Reply (dkt. 61) p. 2, n.1 (preservation of jury rights).

▪ Of the statutorily "core" claims, that leaves only the complaints' objections to the Directors' claims (including equitable subordination). *See In re USDigital, Inc.*, 461 B.R. 276 (Bankr.D.Del.2011) (§ 510(c) claims are both statutorily and constitutionally core). The Directors have not established that they have any jury right as to these claims, so under *Stern's* first alternative test this Bankruptcy Court can issue final judgments or orders on those claims, *i.e.*, on Counts 24–32 of the complaint (dkt.1). Some of the other claims might also qualify, however, under *Stern's* alternative test.

b. *Stern's* **alternative test: Constitutional authority to adjudicate matters that "would necessarily be resolved in the claims allowance process"**

In referring to an action that "would *necessarily* be resolved in the claims allowance process" (*Stern*, 131 S.Ct. 2594, 2618, emphasis added), the *Stern* plurality apparently means to encompass both (i) the

adjudication of "hierarchically ordered claims to a pro rata share of the bankruptcy res" (*id.* at 2614)—*i.e.,* claims allowance (including priority)—and (ii) the adjudication of factual and legal issues that would *not* be constitutionally core if addressed on their own, but that would *necessarily* be resolved, under principles of res judicata (issue preclusion and, apparently, claim preclusion), in the process of allowing or disallowing filed claims. *See Stern,* 131 S.Ct. 2594, 2615–18 (plurality opinion, Part III.C.2) (following *Katchen v. Landy,* 382 U.S. 323, 330–40 & nn. 5 & 11, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966) ("The normal rules of *res judicata* and collateral estoppel apply to the decisions of bankruptcy courts.") (citation omitted); *Langenkamp,* 498 U.S. 42, 44, 111 S.Ct. 330). *Compare Matrix IV, Inc. v. Am. Nat. Bank & Trust Co. of Chicago,* 649 F.3d 539, 549–52 (7th Cir.2011) (holding that issue preclusion applied, and therefore declining to address whether claim preclusion also would bar non-core claims, when the latter arose out of same set of operative facts or same transaction as earlier core claims that had actually been litigated and finally determined). Put differently, it is not enough that the bankruptcy estate has some sort of "counterclaims" against persons who file claims against the estate (28 U.S.C. § 157(b)(2)(C)) because *Stern* held that including *all* counterclaims is too broad. But, if the adjudication of the creditor's claims against the estate *necessarily* would be preclusive as the estate's non-core claims against the creditor, then there would be nothing left to adjudicate on the non-core claims once the core claims are resolved.

**(i) Adjudication of claims by the *Primary* Directors and RHM against the bankruptcy estate "necessarily" would resolve the estate's avoidance claims, by virtue of § 502(d)**

■ The plaintiff objects to the claims of the Primary Directors and RHM

against the bankruptcy estate under § 502(d), which provides:

> [T]he court shall disallow any claim of any entity from which property is recoverable under [various provisions of the Bankruptcy Code including § 550] or that is a transferee of a transfer avoidable under [additional provisions of the Code, including §§ 544, 547 and 548], unless such entity or transferee has paid the amount, or turned over any such property.... [11 U.S.C. § 502(d).]

This statute requires the determination of both the existence and amount of any avoidable transfer as part of the claims allowance process. Therefore, adjudication of those claims against the bankruptcy estate *necessarily* would resolve the estate's claims for avoidance and recovery of avoidable transfers. This Bankruptcy Court therefore can issue a final judgment or order as to the avoidance claims.

The Supreme Court explained this analysis under the Bankruptcy Act, in a case involving an avoidable preference:

> The normal rules of *res judicata* [claim preclusion] and collateral estoppel [issue preclusion] apply to the decisions of bankruptcy courts.... [A] bankruptcy court's resolution of the [Bankruptcy Act] § 57g objection [predecessor statute to § 502(d)] is res judicata in a subsequent action by the trustee under [Bankruptcy Act] § 60 [predecessor to § 547] to recover the preference. To require the trustee to commence a plenary action [involving a jury trial] in such circumstances would be a meaningless gesture, and it is well within the equitable powers of the bankruptcy court to order return of the preference during the summary [non-jury] proceedings on allowance and disallowance of

claims. [*Katchen v. Landy*, 382 U.S. 323, 334–35, 86 S.Ct. 467 & *see id.* at nn.5 & 11 (citations omitted).]

The Supreme Court has confirmed that this same analysis applies under § 502(d) of the Bankruptcy Code. *See Langenkamp v. Culp*, 498 U.S. 42, 44, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990) (if creditor files proof of claim then, per § 502(d), preference action "becomes part of the claims-allowance process which is triable only in equity" so no jury right) (citation omitted); *Stern*, 131 S.Ct. 2594, 2615–18 (plurality opinion, Part III.C.2) (following *Katchen* & *Langenkamp*).

Therefore, this Bankruptcy Court has the authority to issue final judgments or orders on the plaintiff's avoidance claims against the Primary Directors and RHM because, by virtue of § 502(d), the plaintiffs' claims "would *necessarily* be resolved in the claims allowance process." *Stern*, 131 S.Ct. 2594, 2618 (emphasis added). *See also Bellingham*, 702 F.3d 553, 562, n. 7 ("not possible" to rule on claim allowance without resolving fraudulent transfer issue).

### (ii) The same analysis does *not* apply with respect to § 510(c)

The plaintiff has only brought § 502(d) claims against the Primary Directors and RHM. But *all* of the Directors have filed claims (*see* Complaint (dkt.1) ¶ 222) and the plaintiff seeks equitable subordination of those claims under § 510(c). *Id.* ¶¶ 221–24 *and, e.g.,* ¶ 227. At first it may appear that the same reasoning applies under § 510(c) as under § 502(d), but that is not so.

It is true that part of the claims allowance process is a determination of the equitable subordination claim, and the equitable subordination claim rests on exactly the same set of factual allegations as the plaintiff's other claims, so litigation regarding equitable subordination *might* include

whether the plaintiff can establish the other claims alleged in the complaint. *See generally In re Granite Partners, LP*, 210 B.R. 508, 515 (Bankr.S.D.N.Y.1997) ("allegations of aiding and abetting [a third party's] fraud also satisfy the pleading requirement for equitable subordination"). But those other claims would not "*necessarily* be resolved in the claims allowance process." *Stern*, 131 S.Ct. 2594, 2618 (emphasis added).

For example, the plaintiff might be able to prevail on its equitable subordination claim without prevailing on its fraudulent transfer claims. That distinguishes § 510(c) litigation from other types of litigation in which it has been held that non-core claims are necessarily resolved as part of the claims allowance process. *See, e.g., In re Wash. Coast I, LLC*, 485 B.R. 393, 406–07 (9th Cir. BAP 2012) (Bankruptcy Court could issue final judgment as to lien priority dispute, notwithstanding that underlying issues depended on Washington State law, because the dispute was inherent in the claims resolution process, and also because it "involves the adjudication of rights created by the Bankruptcy Code under § 506"); *In re Deitz*, 760 F.3d 1038 (9th Cir.2014) (nondischargeability action necessarily involved determination of the underlying non-core claims, so bankruptcy court could enter final judgment determining dollar amount of such claims).

To be clear, the question is whether preclusion *necessarily* applies, not whether it will turn out to apply. The burden of establishing equitable subordination is very heavy, so if the plaintiff can carry that burden then it might well have established most or all of the elements of some of its other claims under principles of preclusion. *See generally In re First Alliance Mortg. Co.*, 471 F.3d 977, 1006–7 (9th Cir.2006) (although "there is surely something 'inequitable' in an abstract sense

about aiding and abetting fraud," that conduct did not "did not amount to the kind of fraud meant to be remedied by equitable subordination of bankruptcy claims") (citations omitted). *Compare Matrix IV,* 649 F.3d 539, 549–52 (discussing issue and claim preclusion in the wake of *Stern*). But that is an issue for another day.

### c. Summary under *Stern's* two alternative tests

This Bankruptcy Court can issue final judgments and orders on the following claims in the complaint:

(1) objections to the Directors' claims, including equitable subordination **(Counts 24–32),** and

(2) the avoidance claims as against the Primary Directors (by virtue of their claims against the estate and the estate's objections to their claims under § 502(d)), which include:

(a) avoidance of the RHM software rights transfer **(Counts 6–9)** as to which RHM is allegedly the initial transferee and the Primary Directors are allegedly subsequent transferees and/or persons for whose benefit the initial transfer was made (*see* Complaint (dkt.1) ¶ 206);

(b) avoidance of CCCD note sale to Hughes for $1 **(Counts 10–13)** (see *id.* ¶ 207);

(c) avoidance of the 2100 Grand transfers to the Primary Directors to fund the purchase of the leased-back 2100 Grand property **(Counts 16–19)** (*see id.* ¶ 209) (but note that as against 2100 Grand— which has not filed a claim—this Bankruptcy Court can only issue proposed findings of fact and conclusions of law);

(d) avoidance of the Weinberg PTO payments **(Count 20)** (see *id.* ¶ 210).

As to other claims, only proposed findings of fact and conclusions of law can be issued unless another exception to *Stern* applies. There is, in fact, an applicable exception for the motions to dismiss and for a more definite statement that are currently presented.

**3. This Bankruptcy Court has authority to issue final rulings on pretrial matters, including claim-dispositive motions, that do not require factual findings**

 Even in a non-core proceeding, this Bankruptcy Court can issue final rulings on pretrial matters, including claim-dispositive motions, that do not require factual findings. *See PDG Los Arcos, LLC v. Adams,* 436 Fed.Appx. 739, 743 (9th Cir.2011) ("Even if a party is entitled to a jury trial in a noncore proceeding, the bankruptcy court may retain jurisdiction and decide a dispositive pretrial motion such as a motion to dismiss."); *In re Hettick,* 413 B.R. 733, 742 (Bankr.D.Mont. 2009) (in Ninth Circuit a bankruptcy court may handle pretrial matters); *In re Prof'l Satellite and Commc'n, LLC,* 2012 WL 6012829, at *3 (S.D.Cal.); *In re Heller Ehrman, LLP,* 2011 WL 4542512, at *3 (Bankr.N.D.Cal.) (citing *In re Healthcentral.com,* 504 F.3d 775, 787 (9th Cir.2007)). *See also Arkison,* 134 S.Ct. 2165 (district court's *de novo* review was same under appeal from summary judgment ruling as it would have been for proposed findings of fact and conclusions of law, so no violation of *Stern*).

The matters presently before this Bankruptcy Court for decision are purely issues of law that require no factual determinations (because the well pleaded factual allegations must be accepted as true). Therefore, notwithstanding that on some claims this Bankruptcy Court lacks the authority to issue a final judgment or or-

der after trial, it still can issue a final judgment or order on all of the issues addressed in the accompanying opinion.

### 4. Alternative constitutional authority if the parties were to consent, expressly or impliedly

The defendants have not expressly consented, and to the contrary they have indicated their lack of consent to this Bankruptcy Court issuing any final judgments or orders. It is worth noting, however, that parties do sometimes change such positions to avoid the expense, delay, and inconvenience of *de novo* proceedings, or for any other reasons. *See Wellness Int'l Network, Ltd. v. Sharif,* —— U.S. ——, 135 S.Ct. 1932, 1947, 191 L.Ed.2d 911 (2015) (parties can consent—expressly or impliedly—to have *Stern* claims heard before a Bankruptcy Court). *See also In re Pringle,* 495 B.R. 447 (9th Cir. BAP 2013) (rebuttable presumption of implied consent once party is alerted, or held to be alerted, to the issue of tribunal's authority and does not timely object).

### 5. Conclusion as to this Bankruptcy Court's authority

In the foregoing analysis this Bankruptcy Court has attempted to follow two potentially conflicting directives from the Supreme Court. On the one hand, in *Stern* the Supreme Court directed the lower courts not to read too broadly Congress' grant of authority in 28 U.S.C. § 157(b), based on its concern that "separation of powers" and "individual liberty" could be threatened by the fact that Bankruptcy Judges lack a lifetime appointment and constitutional salary protection. *See Stern,* 131 S.Ct. 2594, 2615. The Supreme Court did not explain precisely how separation of powers or individual liberty would be threatened by an Article I Judge issuing a final judgment or order, but its references to the lack of lifetime appointment and salary protections suggests that it was concerned about actual or perceived threats to the Article I Judge's impartiality because his or her rulings might lead the other branches of government or the populace to oppose that judge's reappointment, or to call for a reduction in salary.

On the other hand, the Supreme Court has directed the lower courts not to rule a statute unconstitutional (in this case 28 U.S.C. § 157(b)) except to the extent truly necessary. *See, e.g., Washington State Grange v. Washington State Republican Party,* 552 U.S. 442, 450–51, 128 S.Ct. 1184, 170 L.Ed.2d 151 (2008); *Boos v. Barry,* 485 U.S. 312, 331, 108 S.Ct. 1157, 99 L.Ed.2d 333 (1988); *Regan v. Time, Inc.,* 468 U.S. 641, 652, 104 S.Ct. 3262, 82 L.Ed.2d 487 (1984). Following this directive, it seems appropriate for this lower court not to interpret *Stern* too broadly, and instead to follow *Stern's* guidance that it "does not change all that much" (131 S.Ct. 2594, 2620). That seems particularly appropriate for two practical reasons.

First, although *de novo* review does not *necessarily* require a complete re-litigation of all issues (see Rule 9033(d) *and Heller,* 2011 WL 4542512, at n. 11), there will be considerable added expense, delay, and inconvenience to all parties (and to the Federal District Court) to the extent that the parties have to re-litigate their disputes *de novo.*

Second, concerns about separation of powers and individual liberties (impartiality) are tempered by the fact that Bankruptcy Judges are appointed and reappointed by Article III Judges (28 U.S.C. § 152(a)), they are paid a fixed percentage of the salaries of Article III Judges (28 U.S.C. § 153(a)) (bankruptcy judges' salaries are "equal to 92 percent of the salary of a judge of the district court of the United States"), and the District Court can withdraw the reference at any time (28 U.S.C. § 157(d)). *See Wellness,* 135 S.Ct.

1932, 1944–47 (relying principally on these grounds); *and see also Stern*, 131 S.Ct. 2594, 2626–27 (dissent of Justices Breyer, Ginsburg, Sottomayor and Kagan). True, Congress *could* change those things, but then Congress hypothetically could do many things that would threaten judges' impartiality. For example, Congress could deprive Article I Judges or even Article III Judges of minimally sufficient funding for law clerks, but the Supreme Court has not suggested that this mere possibility makes existing federal pay scales unconstitutional.

For these reasons, and being mindful of not imposing undue costs on all parties and the District Court, the undersigned Bankruptcy Judge has attempted not to adopt too broad a reading of *Stern*. Nevertheless, in attempting to parse the plurality and other opinions in *Stern*, this opinion reluctantly concludes that *de novo* litigation generally will be required as to most of the complaint's claims unless those claims can be resolved without having to determine factual issues (or if the parties consent).

## C. Other Preliminary Issues

No party has questioned the plaintiff's standing as successor in interest to the bankruptcy estate. *See* Joint Plan (Case dkt. 352), Section 6.1. Venue is proper under 28 U.S.C. §§ 1408(1) and 1409(a).

## III. CONCLUSION

■■■ For the foregoing reasons, this Bankruptcy Court concludes that it has the subject matter jurisdiction and authority to issue final judgments or orders on the claims objections (including equitable subordination) and the avoidance claims under §§ 547, 548 and 550 against the Primary Directors and RHM. In addition, in this pretrial context, this Bankruptcy Court can also issue final rulings on the

motions to dismiss and for a more definite statement.